A91A1398. IN THE INTEREST OF J. M. C., a child.
(410 SE2d 368)

SOGNIER, Chief Judge.

The mother of J. M. C. appeals from the order of the Juvenile Court of Hall County terminating her parental rights.

The record reveals that appellant has abused alcohol and drugs for many years and has a history of convictions for shoplifting and drug offenses. She has five children, all of whom have different biological fathers. DFCS obtained legal custody of J. M. C., who was born on May 21, 1983 and was seven years old at the time of the hearing, at birth. J. M. C. remained in DFCS custody until the age of 33 months, then was returned to appellant's custody until October 1989, when appellant was incarcerated, and has been in foster care since. J. M. C.'s father voluntarily surrendered his parental rights in 1983.

Shortly after appellant was released from prison in December of 1989, her DFCS caseworker prepared and discussed with her a plan for reunification with J. M. C. and ensuring the continuation of her parental rights in the child. The plan called for the achievement of several goals, including the requirements that appellant stay drug and alcohol free; receive treatment for drug abuse for at least six months; visit regularly with the child; find stable housing; and stay out of trouble. The record shows appellant did not follow this plan.

Appellant lived at five different addresses during the time between her release from prison and the hearing on the DFCS petition to terminate her parental rights. Although her visits with J. M. C. were regular at first, they became sporadic and then ceased. Appellant obtained no consistent or verifiable treatment for her substance abuse, and while making a home visit in August 1990 appellant's probation officer found drug paraphernalia in appellant's bedroom. In lieu of incarceration for probation violation, appellant was ordered to attend a one year residential drug and alcohol abuse treatment program, which she was still attending at the time of this hearing.

Social workers testified that J. M. C. resisted visitation with his mother, and usually exhibited behavior problems both before and after visits. During one visit, J. M. C. was observed using profanity, which appellant's husband encouraged. J. M. C. suffers from attention deficit disorder as well as physical problems, and his increasingly destructive and violent behavior necessitated his removal by DFCS from one foster care placement at the request of the foster family.

As correctly noted by the trial court, the decision to terminate parental rights is a two step process. First, the court must determine "whether there is present clear and convincing evidence of parental misconduct or inability as provided in [OCGA § 15-11-81 (b)]." OCGA § 15-11-81 (a). If so, "the court shall then consider whether termination of parental rights is in the best interest of the child, after

considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." Id.; see *In the Interest of A. T.*, 187 Ga. App. 299, 301 (2) (370 SE2d 48) (1988). If parental rights have been terminated by the trial court, our standard of review on appeal " 'is whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights had been lost. (Cit.)' [Cit.]" *In the Interest of R. L. H.*, 188 Ga. App. 596, 597 (373 SE2d 666) (1988).

The term "parental misconduct or inability" is defined by statute: "The court determines parental misconduct or inability by finding that . . . [t]he child is a deprived child, as . . . defined in [OCGA §] 15-11-2; . . . [t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; . . . [s]uch cause of deprivation is likely to continue or will not likely be remedied; and . . . [t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81 (b) (4) (A). No question exists in the case sub judice that J. M. C. is deprived, having been declared so as early as birth, and given the circumstances thus far in his life. No question exists as well that continued deprivation is likely to cause serious harm,' or that the deprivation has been caused by appellant's lack of proper parental care and control, the record being replete with evidence of chronic drug and alcohol abuse resulting in incarceration and consequent neglect of J. M. C., as well as appellant's failure to comply with the plan for reuniting her with her child. See OCGA § 15-11-81 (b) (4) (C) (iii).

Appellant contends that her recent entry into a treatment program and the testimony of Marilyn Davis, the director of the treatment facility in which appellant is in residence, that she has seen "a significant change" in appellant, render it unlikely that the deprivation of J. M. C. will continue. However, the trial court noted that it had relied in the past on appellant's previous promises to change, but in those instances the change had not materialized. "[T]he past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. [Cits.]" *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246) (1987). Unlike the parent in *In re N. F. R.*, 179 Ga. App. 346, 347-349 (2) (346 SE2d 121) (1986), who demonstrated significant progress in overcoming her prior substance abuse problems and had obtained permanent employment and stable housing, appellant had only temporary employment, had been drug free only a short time, had been in drug treatment only three months, and faced the prospect of many more months in residential treatment which required absence from her children. Based on the evidence of appellant's past behavior and

the length of time the problem had existed, we find that a rational factfinder could have found by clear and convincing evidence that the conditions of J. M. C.'s deprivation were likely to continue.

In considering the child's best interest, the trial court may consider the child's need for a stable home situation and the detrimental effects of prolonged foster care. *In re G. M. N.*, 183 Ga. App. 458, 461 (1) (359 SE2d 217) (1987). In this case, citing the evidence presented of increasing harm to the child, his need for bonding and permanence, the lack of alternatives to termination of appellant's rights other than keeping J. M. C. in foster care, and the effects of "foster [care] drift," the trial court refused to "pay mere 'lip service' to [its] grave obligation [to protect the child] by preserving in legal fiction [an] already harmful and deteriorated parent/child relationship" and subjecting the child to "the likelihood not only of continuing emotional harm, but" also of potential danger. The trial court's decision was supported by clear and convincing evidence, and we affirm. See generally *In the Interest of R. L. H.*, supra.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 10, 1991.

*Summer & Summer, Daniel A. Summer*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Charles W. Smith, Jr., Special Assistant Attorney General, Margot M. Cairnes, Staff Attorney*, for appellee.