A97A2438. IN THE INTEREST OF R. D. S. P., a child.
(495 SE2d 867)

ANDREWS, Chief Judge.

Appellant, the father of R. D. S. P., appeals from the juvenile court's order terminating his parental rights to his one-year-old son.[1] The father argues on appeal there was insufficient evidence to support the judgment. We disagree and affirm.

The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992). On appeal, "[t]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

---

[1] The mother, whose parental rights were also terminated, abandoned the child a few days after his birth and has not appealed the termination of her parental rights. Although the father was not married to the child's mother when the child was born, he legitimated the child shortly after birth.

The record shows that the child was born in February 1996. The child tested positive for cocaine at birth, and the mother had no plans to care for the child after they left the hospital. The Department of Family & Children Services (DFACS) filed a petition alleging the child was deprived. Although neither parent attended the deprivation hearing, the father, who was in jail on a felony drug conviction, later met with a DFACS caseworker to devise a family reunification plan. Under this plan the father was to fulfill several requirements upon his release from jail and take a psychological test while in jail. Although the father agreed to do the psychological test, he did not cooperate fully. The psychologist who did the evaluation testified that the father was not "forthcoming" in his answers and claimed to have "absolutely no problems whatsoever." The father also was not entirely truthful in the interview, failing to mention a prior felony drug conviction.

DFACS then filed a petition to terminate both parents' parental rights. At the time of the hearing on the termination petition, the father was still in jail and had been there since shortly after R. D. S. P.'s birth. As a result, the father had little, if any, contact with the child and had never contributed to the child's support. Moreover, the father had not complied with the reunification plan in that, by his own admission, he did not cooperate with the psychological testing. Nevertheless, the father appeals from the termination of his parental rights, arguing that he will remain drug free in the future and that his mother is willing and able to care for the child until he is released from jail and can establish a home for the child.

"Pursuant to OCGA § 15-11-81 (a), a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is clear and convincing evidence of parental misconduct or inability." (Punctuation omitted.) *In the Interest of R. N.*, supra. A finding of parental misconduct or inability must rest on clear and convincing evidence showing: (1) the child is a deprived child as defined by OCGA § 15-11-2; (2) the lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (3) such cause of deprivation is likely to continue or will not likely be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A) (i), (ii), (iii), and (iv); *In the Interest of R. N.*, supra. The Code defines a "deprived child" as "a child who: (A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health or morals. . . ." OCGA § 15-11-2 (8) (A). If the first prong of the test is met, the trial court then considers whether termination of the parental rights is in the child's best interest. *In the Interest of R. N.*, supra.

The evidence at the hearing was that, in addition to the felony conviction for which he is currently serving a sentence, the appellant had another felony conviction for attempting to possess cocaine in 1989 and also was convicted of misdemeanor possession of marijuana in 1984. Appellant's mother testified that he started having problems with drugs in high school and these problems continued, culminating in his current jail sentence.

Appellant has another child, a 12-year-old boy, and the boy's mother testified that appellant was a good father while she was married to him. However, she said that since the divorce appellant has spent little time with his son. She also stated that she would allow the boy to see his father only if the boy's grandmother was present. She said she imposed this restriction because the appellant was involved with drugs and she was afraid he and his friends would be a bad influence on the child. The former wife testified that appellant had never paid her any child support for their son, but she also stated she never asked for any child support.

Appellant's drug use also concerned the DFACS caseworker who investigated problems with appellant's niece. The child lived with appellant's mother, and the caseworker testified he told the mother she must not allow appellant to come to the house anymore or the child might have to be removed from the home.

As to appellant's claim that his mother could care for the child until he could find a place to live, the caseworker also testified that DFACS had received complaints about the living conditions at the grandmother's house. The caseworker stated that when he investigated the complaints, he found doors off the hinges, holes in the walls, flea infestation, and generally deplorable living conditions. Although appellant's mother had tried to improve the physical conditions in the house, the caseworker said he was still concerned with reports of drug use in the home.

It is undisputed that R. D. S. P. is a deprived child and the deprivation is a result of the lack of proper parental care. Accordingly, this Court must focus on the third criterion of OCGA § 15-11-81 (b) (4) (A) (iii), whether the deprivation is likely to continue. In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent. *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991). In this case, there was not only evidence of past unfitness, there was present unfitness also. *Blackburn v. Blackburn*, 249 Ga. 689, 692 (292 SE2d 821) (1982). While imprisonment alone does not automatically authorize a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist. *In the Interest of L. F.*, supra.

Here, in addition to his present imprisonment, the father has a

long history of criminal convictions and drug-related problems. Equally significant is the reluctance of both the caseworker and appellant's former wife to allow appellant to be with his niece or son without supervision. In light of this evidence, the court was authorized to conclude that the deprivation was likely to continue and to find by clear and convincing evidence that the cause of the deprivation was the father's misconduct and inability to care for the child.

In looking at the second prong of the test, whether termination is in the best interest of the child, the court may consider the child's need for a stable home environment and the detrimental effects of prolonged foster care. *In the Interest of J. M. C.*, supra at 175. These considerations together with the evidence of the father's inability to care for the child were sufficient clear and convincing evidence that termination was also in the best interest of the child. Id.; *In the Interest of T. R. G.*, 162 Ga. App. 177 (290 SE2d 523) (1982).

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 15, 1998.

*John D. Gatch, Darden & Moyers, Andrea S. Moyers*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Stephanie M. Baldauff, Shalen A. Sgrosso, Assistant Attorneys General, Beckmann & Lewis, Leo G. Beckmann, Jr.*, for appellee.