A97A2399. IN THE INTEREST OF C. D. C. et al., children.
(495 SE2d 872)

ANDREWS, Chief Judge.

The mother of C. D. C. and K. F. W. appeals from the order of the juvenile court terminating her parental rights. She raises two enumerations of error, claiming the juvenile court did not have subject matter jurisdiction over this issue and also that the Georgia Department of Human Resources, acting through the Cobb County Department of Family & Children Services (Department) failed to prove by clear and convincing evidence that her parental rights should be terminated. We disagree and affirm the judgment of the juvenile court.

1. First, the mother claims the juvenile court did not have subject matter jurisdiction over this case because the Petition for Termination is in connection with an adoption proceeding. She argues the Petition for Termination of Parental Rights asks for the rights to be terminated so the children can be awarded to the Georgia Department of Human Resources and placed for adoption. She claims the juvenile court is without jurisdiction because Chapter 8 of Title 19 of the Georgia Code provides the Superior Courts shall have exclusive jurisdiction to terminate parental rights in connection with adoption proceedings. OCGA § 19-8-2.

This argument fails because there is no adoption proceeding in progress; merely a termination of parental rights so that custody may be awarded to the Department and the children may be placed for adoption at some time in the future. Therefore, because this action was not brought "in connection with" a Petition for Adoption, jurisdiction was proper in the juvenile court. *In the Interest of B. G. D.*, 224 Ga. App. 124, 125 (479 SE2d 439) (1996).

2. Next, the mother claims the Department did not prove by clear and convincing evidence that her parental rights should be ter-

minated under OCGA § 15-11-81 (b). This Code section provides that the court may terminate the parental rights of a parent if the court determines parental misconduct or inability by finding that (1) the child is a deprived child as defined by OCGA § 15-11-2; (2) the lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (3) such cause of deprivation is likely to continue or will not likely be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional or moral harm to the child. OCGA § 15-11-81 (b) (4) (A) (i), (ii), (iii) and (iv). The Code defines a "deprived child" as "a child who: (A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health or morals. . . ." OCGA § 15-11-2 (8) (A).

It is undisputed that C. D. C. and K. F. W. were and are deprived children. The mother did not appeal three prior juvenile court orders finding the children to be deprived. Further, she does not contend on appeal that the children do not meet the statutory definition of deprived children or that the evidence is not clear and convincing that, as far as her past history is concerned, her parental rights should be terminated.

Although the mother acknowledged at the hearing that she was unable to care for the children at this time, she argued there has been a "substantial improvement" in her "life and health." She is currently enrolled in a program called "Bright Beginnings," a two-year residential rehabilitation program for homeless, mentally ill adults and adults with a diagnosis of mental illness and substance abuse. In light of this, she argued her rights should not be terminated at this time. When the court asked her how much more time she thought she would need before she could care for her children, she at first replied she did not know. After repeated questioning, she said, "maybe a year."

Accordingly, this Court must focus on the third criterion of OCGA § 15-11-81 (b) (4) (A) (iii), whether the deprivation is likely to continue. In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent. *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991). Also, in cases of this type in which the parent is unable to care for the child due to some type of mental disability, the court must make the welfare of the children its paramount concern. *In the Interest of T. R. G.*, 162 Ga. App. 177, 179 (290 SE2d 523) (1982). In determining the best interest of the children, the court may consider the children's need for a stable home environment and the detrimental effects of prolonged foster care. *In the Interest of J. M. C.*, supra at 175.

With these criteria in mind, we look first at the mother's past conduct. The mother has a long history of mental illness and began

seeing psychiatrists when she was eight or nine years old. She has been hospitalized several times for psychological problems and has been diagnosed with bipolar disorder. At the time of the hearing, she was taking several prescription drugs for these problems: lithium for mood swings, Navane for scattered thoughts, Benadryl for side effects, and Mellaril for depression.

The mother has problems with drug and alcohol abuse and also has a history of arrests and convictions including felony sale and possession of cocaine, felony interference with government property, destruction of property and forgery. The reason the children were placed in the Department's custody in March 1991, was because both parents were in jail. At the time, K. F. W. was two and one-half years old and C. D. C. was six months old.

Since that time, the mother has not had custody of the children. In October 1991, the children were placed in the care of their paternal great-aunt. Then, in July 1992, the children were returned to the custody of the Department as the great-aunt was no longer able to take care of them. In November 1993, a Citizens Review Panel first recommended termination of parental rights because the parents had failed to make any reasonable progress toward the goal of reunification. In January 1994, the juvenile court continued its order of July 1992, and custody by the Department was continued for an additional two years. In July 1994, a Citizens Review Panel reviewed the case and again recommended termination of parental rights. The father did not contest this recommendation.

In looking at the mother's relationship with the children, the evidence showed that since the Department assumed custody of the children in 1991, she contributed only $50 to the Department for the children's support. The mother also testified that, despite receiving over $8,000 in 1993 from a movie deal, she did not spend any of that money on the children except to give the foster mother some money for shoes, money to get one of the girl's ears pierced, and money for food and drinks when she visited with the children.

However, as the mother points out, she is trying to overcome her past problems. There was testimony at the hearing that the mother had been drug and alcohol-free for almost a year. Also, the guardian ad litem testified that the children were happy in their foster home. She stated that based on the permanency of a termination order, she did not feel it was in the children's best interest to terminate the mother's parental rights at this time.

Nevertheless, the court correctly determined that the children's deprivation was likely to continue. The mother is staying at a place for homeless, mentally ill adults with substance abuse problems. She does not know when, if ever, she will be able to care for her children. Further, the children have not lived with their mother since 1991,

when one of the children was two and one-half years old and the other six months.

Accordingly, there was clear and convincing evidence to support the court's decision to terminate the mother's parental rights. Taking into consideration the best interests of the children, the need for a stable home environment and the detrimental effects of prolonged foster care, the juvenile court did not err in its decision. *In the Interest of J. M. C.*, supra; *In the Interest of T. R. G.*, supra.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED JANUARY 16, 1998.

*Reagan W. Dean*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Dorothy L. Bjork, James K. Knight, Jr.*, for appellees.

