A98A0612, A98A0613. IN THE INTEREST OF A. W., a child (two cases).
(501 SE2d 22)

ELDRIDGE, Judge.

On November 16, 1995, A. W., a baby, was adjudicated as deprived and committed to the custody of the Whitfield County Department of Family & Children Services ("DFACS").

This is an appeal by the mother and father of the termination of their parental rights by the Juvenile Court of Whitfield County on August 25, 1997; the termination of parental rights resulted from the parents' failure under the reunification plans developed by DFACS after the initial deprivation and removal procedure. The case was tried on August 21, 1997.

A. W. was born on October 5, 1995, and tested positive at birth for cocaine and was determined to be at risk of neglect and abuse from her parents by the juvenile court upon petition by DFACS. As a result, she trembled frequently, had difficulty sleeping, was hyperactive and restless, and had reflux problems. She shows signs similar to Attention Deficit Hyperactivity Disorder.

Both parents acknowledged that they had drug and alcohol problems, and the mother had cocaine metabolite in her blood when she gave birth; the mother was arrested and pled guilty to cocaine possession as a consequence of the presence in her blood. At the time

of delivery, both parents smelled of alcohol. DFACS was granted custody two days after A. W.'s birth. After delivery of A. W., the mother underwent a 28-day in-patient treatment program for drug and alcohol abuse. She was prosecuted and pled guilty on March 6, 1996, to the possession of cocaine, i.e., having it in her blood stream so that, at birth, A. W. was positive for cocaine metabolite.

Reunification with the parents was attempted for 13 days on the condition that the mother remain alcohol-free, but the attempt failed when she again began consuming alcohol and was unable to cope with the baby. The baby has stayed in foster care for the remainder of her life. DFACS failed to have the parents undergo periodic drug and alcohol screens over the 22 months that A. W. was in custody, because neither parent had custody. However, the mother submitted two negative drug screens made on March 14, 1996, and June 10, 1996.

DFACS has had prior involvement with the mother regarding neglect complaints involving an older sister, J., one in 1993 and two in 1994; the daughter ultimately was placed in her father's custody. DFACS also had prior involvement with A. W.'s father in regard to his son, B., one in 1993 and two in 1995. These neglect complaints involved drug and alcohol abuse by the father, resulting in lack of supervision of the son. In 1997, DFACS received custody of B. because of the neglect.

DFACS and the parents of A. W. entered into a reunification plan which had a number of goals. The first goal was that the parents remain drug- and alcohol-free. The second goal was that the parents maintain a drug- and alcohol-free home. The third goal required the parents to obtain their own source of income; however, the parents failed to provide DFACS with proof of employment, were not able to establish employment since the birth of A. W., and remained unemployed. The fourth goal was that the parents maintain regular and consistent contact with the child. While the parents were required to cooperate with DFACS as the fifth goal and expressed the desire to do so, neither parent was able to maintain progress on the goals, which was partially due to repeated incarcerations.

The mother was arrested for shoplifting in April 1996; it was her second such arrest and caused her probation from the cocaine possession sentence to be revoked. When not incarcerated, the mother visited the child consistently between December 1996 and May 1997.

When not incarcerated, the father visited consistently until some time in December 1996; after that period, his incarcerations prevented visitation. Since then, however, the father has served ten days in jail, then ninety days in a "boot camp," and has been incarcerated in prison since May 16, 1997. In October 1996, DFACS informed the father that, since he had taken no steps to legitimate A. W., then

he would not be allowed to visit. The action to terminate the putative father's parental rights was filed March 27, 1997. The father legitimated the child on June 26, 1997, after DFACS commenced this action. The mother was incarcerated in December 1996, and this caused the father to cease visiting A. W., when the mother was unable to accompany him. From February 1997 until April 1997, the father had no contact with DFACS, either.

The father visited the child only once in 1997, because DFACS had informed him that he could not visit A. W., since he had not legitimated the child. The parents provided Christmas and birthday presents for A. W. and came to her birthday party. The parents never had anything other than supervised visitation with A. W.

The plan required that the parents acquire and demonstrate age-appropriate parenting skills as the sixth goal, which neither achieved. In June 1996, the mother completed a parenting course; she completed another in May 1997 while incarcerated. The mother was required by the April 1997 Citizens Review Panel to complete a refresher class on nurturing, because it had been too long since the initial course; however, she never completed a nurturing course. The father never completed any parenting course.

The parents were ordered to support A. W. as the seventh goal, but the father never paid anything toward support of A. W., and the mother paid only $590.

The father had an outstanding indictment containing 16 counts for burglary, theft by taking, criminal damage to property, and theft by receiving; further, he was held in custody for a probation violation. He had a prior conviction for violation of the Georgia Controlled Substances Act and aggravated assault, and served time until 1992. He was convicted of driving under the influence ("DUI") in 1993, 1994, and 1995, when he was declared a habitual violator.

In January 1997, the mother was convicted of misdemeanor shoplifting, and her probation was revoked. In March 1997, she again was convicted of misdemeanor theft by shoplifting and criminal trespass.

A. W. has lived her entire life with foster parents and has bonded with them as her parents. The foster parents wish to adopt the child that they have had in their custody since her second day of life.

A. W. has not bonded to her biological parents and will not stay alone in the room with them. Both parents are continually in and out of jail, remain unemployed, and do not maintain their own residence. Until June 1997, the father did not legitimate A. W. The parents have produced another child besides A. W., while losing custody of an older child. The father has failed to support A. W., while the mother has paid less than one-half of the court mandated support.

The enumeration of error of the parents is that the juvenile court

had insufficient evidence by a clear and convincing standard to terminate their parental rights. We do not agree.

While the mother partially met the parenting training goal, the communication goal, and the support goal, she failed to complete such goals or make successful progress toward their completion. She failed to achieve the goals of being drug- and alcohol-free, obtaining employment, maintaining a drug- and alcohol-free home, and maintaining a stable residence. The father only partially met the contact goal, but completely failed to meet the other goals.

Parental unfitness, caused either intentionally or unintentionally, which results in abuse or neglect of the child or which is tantamount to physical or mental incapacity to care for the child, will justify the termination of parental rights. *In the Interest of T. R. L.*, 162 Ga. App. 659, 660 (292 SE2d 518) (1982). The juvenile court properly went through the two-step process for termination of parental rights. OCGA § 15-11-81 (a); *In the Interest of A. M. V.*, 222 Ga. App. 528, 529 (474 SE2d 723) (1996); *In the Interest of A. T.*, 187 Ga. App. 299, 301 (370 SE2d 48) (1988).

There was clear and convincing evidence of deprivation of A. W. and that the deprivation would continue in the future. A. W.'s testing positive for cocaine at birth brought her within OCGA § 15-11-2; such positive test showed that the mother was the cause of such deprivation status. Further, the mother's failure to remain alcohol-free during the attempted reunification demonstrated that deprivation was likely to recur in the future and would not be remedied by the mother, which would cause future physical, mental, emotional, and moral harm for A. W. See OCGA § 15-11-81 (b) (4) (A) (i)-(iv), (B) (ii); *In the Interest of D. T.*, 221 Ga. App. 328, 329 (471 SE2d 281) (1996); *In the Interest of G. K. J.*, 187 Ga. App. 443 (370 SE2d 490) (1988). Such factors, which showed the existence of parental misconduct or the inability to remedy the cause of deprivation, also supported the trial judge's finding that the termination of parental rights was in the best interest of the child, because such factors are good predictors that the parents' conduct would continue into the future and that the failures of both parents to meet the reunification goals were in whole or part caused by alcohol. See OCGA § 15-11-81 (a).

Neither parent has established a stable home for themselves, let alone for A. W. The father totally failed to support A. W., and the mother only partially supported the child. Neither obtained or maintained employment. Their contact has been prevented repeatedly by their incarceration.

Further, "[t]he past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue." (Citations and punctuation omitted.) *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991); *In*

*the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246) (1987); see *In the Interest of A. M. V.*, supra at 531; *In the Interest of B. P.*, 222 Ga. App. 621, 622 (475 SE2d 673) (1996); *In the Interest of A. M. B.*, 219 Ga. App. 133, 134 (464 SE2d 253) (1995). In this case, both parents had a history of prior reports of neglect or of finding neglect as to older siblings, which ultimately led to the loss of custody of such siblings. In regard to the father, the finding of neglect arose out of alcohol abuse. The father had three convictions of DUI, which indicates a chronic alcohol problem. While there was no evidence produced of alcohol or drug abuse by the mother after July 1996, the mother was found to have used alcohol more than nine months after she had lost custody, which indicates a pattern of continuing misconduct. Each parent had an extensive arrest record and repeatedly was incarcerated, so that they were unable to care for the child; such past conduct was indicative of future conduct. Thus, the juvenile court could find that this conduct was likely to continue in the future. OCGA § 15-11-81 (b) (4) (A) (iii); *In the Interest of P. N. L.*, 228 Ga. App. 187 (491 SE2d 434) (1997); *In the Interest of J. M. C.*, supra at 174.

The trial court must base its decisions on more than positive promises as to future conduct that the past has proven will not be carried out. See *In the Interest of R. N.*, 224 Ga. App. 202, 205 (480 SE2d 243) (1997); *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (451 SE2d 804) (1994). Rather than keep A. W. in foster care until she is beyond the readily adoptable age, with repeated failed reunification plans, the juvenile court properly determined that termination of the parental rights of both parents was in the best interest of A. W. OCGA § 15-11-81 (a); *In re G. M. N. & D. M. N.*, 183 Ga. App. 458, 461 (359 SE2d 217) (1987); *In the Interest of T. R. G.*, 162 Ga. App. 177 (290 SE2d 523) (1982).

*Judgments affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 31, 1998.

*Jerry W. Moncus*, for appellant (case no. A98A0612).
*Michael R. McCarthy*, for appellant (case no. A98A0613).
*Thurbert E. Baker, Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Waycaster, Morris, Johnson & Dean, Cynthia N. Johnson, Jeffrey J. Dean*, for appellee.