A98A0582. IN THE INTEREST OF K. W. et al., children.
(503 SE2d 394)

ANDREWS, Chief Judge.

Pursuant to a termination petition filed on behalf of the Georgia Department of Human Resources, the Juvenile Court issued an order terminating the parental rights of Kimberly Whitehead to her children, K. W., M. W., and M. W., ages five, three, and two years respectively at the time of the termination order. Whitehead appeals from the termination order.

1. It is the duty of this Court on its own motion to examine its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction. *Coles v. State*, 223 Ga. App. 491, 492 (477 SE2d 897) (1996); *Cole v. Cole*, 205 Ga. App. 332 (422 SE2d 230) (1992). Whitehead was a prisoner in the DeKalb County jail when she filed the notice of appeal from the termination order. Accordingly, an issue arises as to whether the present direct appeal filed by Whitehead is controlled by the portion of the Prison Litigation Reform Act of 1996 (OCGA § 42-12-1 et seq.) (the Act) which requires use of the discretionary appeal procedure set forth in OCGA § 5-6-35.

Section 42-12-3 (1) of the Act provides that: "As used in this chapter, the term . . . '[a]ction' means any civil lawsuit, action, or proceeding, *including an appeal, filed by a prisoner*. . . ." (Emphasis supplied.)[1] This section defines the term "action" as used anywhere in the Act to mean any appeal filed by a prisoner. Elsewhere, the Act specifically refers to appeals in Section 42-12-8 which provides that: "Appeals of all actions filed by prisoners shall be as provided in Code Section 5-6-35." This section plainly requires use of the discretionary appeal procedure in appeals from actions filed by a prisoner but not in appeals from actions not filed by a prisoner. Obviously, the Legislature did not intend for the term "actions" in this section to mean "appeals" since this would require the section to be read as "[a]ppeals of all 'appeals' filed by prisoners. . . ." The overall purpose of the Act as stated in § 42-12-2 is to address the rising costs of litigation caused by the filing of meritless and frivolous lawsuits "by prisoners who view litigation as a recreational exercise."

Reading these sections of the Act together, we conclude the Act requires that the discretionary appeal procedure of § 5-6-35 be used only where the appellant is a prisoner or a former prisoner appealing from an action that was filed by the appellant when he or she was a prisoner. See *Jones v. Townsend*, 267 Ga. 489, 490 (480 SE2d 24) (1997). Since Whitehead is not appealing from an action that was

---

[1] Under § 42-12-3 (1), the term "action" as used in the Act does not include a petition for writ of habeas corpus or an appeal of a criminal proceeding.

filed by her when she was imprisoned, she properly filed a direct appeal.

2. The decision to terminate parental rights involves a two-step process. First, pursuant to OCGA § 15-11-81 (a), the court must determine "whether there is present clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of [§ 15-11-81]." Subsection (b) provides in relevant part that "[t]he court determines parental misconduct or inability by finding that: (i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81 (b) (4) (A). Second, if the court finds there is clear and convincing evidence of such parental misconduct or inability, "the court shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-81 (a); *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991). "The standard of appellate review where a parent's rights to [her] child have been severed is whether after reviewing the evidence in the light most favorable to the appellee [Georgia Department of Human Resources], any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) *In the Interest of A. Q. W.*, 217 Ga. App. 13, 14 (456 SE2d 284) (1995). Moreover, in reviewing the evidence on appeal, this Court does not weigh the evidence or determine the credibility of witnesses; rather, we defer to the Juvenile Court's factfinding and affirm unless the evidence fails to satisfy the appellate standard. Id.

In appealing under this standard, Whitehead does not contest the Juvenile Court's determination that the children were deprived as a result of lack of proper parental care or control. Nor does she contest the Juvenile Court's finding that continued deprivation would likely cause serious physical, mental, emotional, or moral harm to the children. Her sole enumeration of error is that there was a lack of clear and convincing evidence that the children's deprivation is likely to continue or will not likely be remedied. OCGA § 15-11-81 (b) (4) (A) (iii).

There was clear and convincing evidence to support the Juvenile Court's determination that the children's deprivation was likely to continue or was not likely to be remedied. At the time of the termina-

tion hearing on April 24, 1996, K. W. and M. W. (age three) had previously been found deprived and placed in the custody of the Department of Human Resources pursuant to the Juvenile Court's order entered on August 31, 1992, finding that Whitehead's history of using illegal drugs had rendered her incapable of properly caring for the children. This order, as extended, remained in effect at the time of the termination hearing. M. W. (age two) had also previously been found deprived and placed in the custody of the Department pursuant to the Juvenile Court's order dated August 30, 1993, finding that Whitehead's continuing drug use problem rendered her incapable of caring for the child. This order, as extended, also remained in effect at the time of the termination hearing.

A court-ordered plan designed to work toward reuniting Whitehead with the children required her to work toward certain goals, one of which was that she demonstrate the ability to remain drug free. At the termination hearing, Whitehead admitted that she is a drug addict. Although she testified that she had completed drug rehabilitation programs and did not currently use drugs, she provided no evidence of completion of any drug program. The DeKalb County Department of Family & Children Services (DFACS) caseworker assigned to the case testified that when she first began monitoring the case in 1993, Whitehead had to leave one drug rehabilitation program because she tested positive for drug use. She testified that Whitehead then entered another drug program but failed to complete it because she failed to go for required drug screenings. The caseworker testified that Whitehead had a short period of clean drug screenings around December 1993. Although Whitehead subsequently told the caseworker that she would re-enter a drug rehabilitation program, she never provided the caseworker with any information to verify that she had done so. The caseworker further testified that a drug screening done on Whitehead in February or March 1995 was positive for drug use. Thereafter, Whitehead failed to make regular contact with the DFACS caseworker, and the caseworker lost contact with her.

The court-ordered reunification plan also required that Whitehead cooperate with and maintain contact with the DFACS caseworker, attend a counseling group, and attend classes to teach her to care for the special needs of M. W. (age three), who was born with cerebral palsy as a result of Whitehead's drug use during her pregnancy. The caseworker testified that Whitehead did not maintain regular contact with her, did not attend the counseling group as required, and did not complete the classes for M. W.'s cerebral palsy disability. Whitehead failed to attend meetings on the court-ordered reunification plan held in February and August 1995. Prior to the date of the termination hearing, Whitehead had not requested visitation with

the children for a period of over one year. She admitted that over a year prior to the termination hearing, she had become frustrated and stopped making regular contact with the DFACS caseworker. Whitehead failed to inform the DFACS caseworker that she was incarcerated from March through August 1995. At the time of the termination hearing in April 1996, Whitehead was incarcerated for violating the terms of her probation on a previous theft conviction.

Although Whitehead testified that she had made efforts to comply with the court-ordered reunification plan and wanted to care for her children when she was released from jail, judging her credibility and weighing the evidence as to her past actions was a task for the Juvenile Court. "[T]he past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. . . . The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (361 SE2d 246) (1987). Accordingly, the evidence was sufficient to support the Juvenile Court's determination that the children's deprivation was likely to continue or was not likely to be remedied.

There was clear and convincing evidence to support the Juvenile Court's finding that there was parental misconduct or inability as defined in OCGA § 15-11-81 and that termination of Whitehead's parental rights was in the best interest of the children.

*Judgment affirmed. McMurray, P. J., Pope, P. J., Johnson, P. J., Blackburn, Smith, Ruffin, Eldridge, JJ., and Senior Appellate Judge Harold R. Banke concur. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in Division 2. I concur in Division 1 because the action, a petition for termination of parental rights and a petition for extension, was filed not by the prisoner but by the Georgia Department of Human Resources acting by and through the DeKalb County Department of Family & Children Services. Whether or not appellant was a prisoner at any time in which this proceeding was pending, from its initiation onward, is irrelevant to the method of appeal required for such cases. Since the petitions are not actions filed by a prisoner, OCGA § 42-12-8 does not apply.

The question of whether actions filed by prisoners seeking a change in family relationships would be subject to OCGA §§ 42-12-8 and 5-6-35 or would be exempt for some reason must await a proper case for resolution.

The remoteness of the connection between appellant's status and the proper method of appeal is heightened by the facts in the context of the subject matter. The mother of these children was not incarcerated at the time the combined petitions were filed on October 31,

1995, but was only a prisoner at the time the notice of appeal was filed on May 24, 1996, and for less than a week beyond that. The DeKalb County Sheriff's Office has advised the court that the appellant was in custody in jail from April 16 to May 30, 1996.

It is noteworthy that there is no explanation for the long delay in the transmittal of the appeal to this Court, from May 1996 to November 1997. See OCGA § 5-6-43 (a) and (d). Because of the necessity of assuring that children's custodial and familial status are legally established as quickly as possible for their welfare, such cases should be expedited through the judicial process, not delayed.

DECIDED JUNE 29, 1998.

*William M. Warner*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Nardone & Read, Robert G. Nardone, Steven J. Matz*, for appellees.