A98A1974. IN THE INTEREST OF B. C., a child.
(508 SE2d 774)

BEASLEY, Judge.

Benjamin Clayton, incarcerated as a habitual felon for burglary, aggravated assault, and probation violations, lost parental rights to his son, B. C. He appeals on the ground that insufficient evidence

supported three findings: (i) present parental misconduct; (ii) the cause of deprivation was likely to continue or would not be remedied; and (iii) termination of parental rights was in the best interest of the child.

"The decision to terminate parental rights involves a two-step process. First, pursuant to OCGA § 15-11-81 (a), the court must determine whether there is present clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of § 15-11-81. Subsection (b) provides in relevant part that the court determines parental misconduct or inability by finding that: (i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. Second, if the court finds there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home. The standard of appellate review where a parent's rights to her child have been severed is whether after reviewing the evidence in the light most favorable to the appellee Georgia Department of Human Resources, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. Moreover, in reviewing the evidence on appeal, this Court does not weigh the evidence or determine the credibility of witnesses; rather, we defer to the Juvenile Court's factfinding and affirm unless the evidence fails to satisfy the appellate standard."[1]

(a) *Present Parental Misconduct.* Conceding the evidence showed the abandoned child was deprived, Clayton argues that the evidence of his parental misconduct (such as his convictions) was insufficient because it related to past, not present, episodes. But OCGA § 15-11-81 (b) (4) (B) provides: "In determining whether the child is without proper parental care and control, the court shall consider . . . (iii) Conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship. . . ."

Expert witnesses testified that Clayton's repeated incarcerations

---

[1] (Citations and punctuation omitted.) *In the Interest of K. W.*, 233 Ga. App. 140, 141 (2) (503 SE2d 394) (1998).

prevented him from interacting and bonding with his son (two years old at the time of trial), from providing him with much-needed stability and trust, and from serving as a good example for him. "Although imprisonment alone does not always compel a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist. These aggravating circumstances may include a criminal history of repetitive incarcerations for the commission of criminal offenses or parole violations, which constitutes an additional factor which may be considered in determining whether the child *presently* is without the proper parental care and control of the offending parent, and that such is likely to continue."[2]

Clayton has been incarcerated for most of the life of the child.[3] In 1990 he was sentenced to five years probation for two counts of felony burglary. He absconded and his probation was revoked. He spent time in a diversion center and absconded again, for which he was sentenced to every weekend in jail for 12 months. On July 10, 1996, he was arrested and incarcerated again for aggravated assault, and his probation was revoked the third time when he pled guilty to the charge in November 1996, making him a habitual felon. He received a five-year sentence, of which two years must be served in confinement. Clayton admits that two-year-old B. C. does not presently know him and that there is no bond between them.

Past conduct during periods of freedom is also a good harbinger of whether deprivation will continue after incarceration. During a period of freedom, Clayton visited the child only four times and was once so tardy that he could spend only five minutes. Clayton has a diagnosed brain functioning disorder which negatively affects his anger control. The aggravated assault conviction arose out of a heated fistfight. He told one officer he would kill the child's mother if freed, and his abuse of a DFACS worker necessitated police intervention. When the mother abandoned the child and the child was placed in the State's custody, Clayton failed for over a year to (i) comply with most aspects of the court-ordered unification plan (obtain stable housing, cooperate with DFACS, maintain contact with caseworker or with child, get psychological evaluation, attend parenting classes); (ii) communicate with the child in a meaningful, supportive, parental manner; and (iii) pay the nominal child support ordered by the court, even when employed.[4]

Clayton's present confinement is a current, not a past, episode.

---

[2] (Citations and punctuation omitted; emphasis in original.) *In the Interest of T. B. R.*, 224 Ga. App. 470, 473 (1) (b) (480 SE2d 901) (1997); see *In the Interest of J. M. W.*, 216 Ga. App. 166, 167 (1) (453 SE2d 764) (1995).

[3] See *In the Interest of T. B. R.*, supra, 224 Ga. App. at 473.

[4] See OCGA § 15-11-81 (b) (4) (C).

His conduct during periods of liberty shows little interest in or capacity for adequately caring for the child. Clear and convincing evidence supported a finding of parental misconduct.[5]

(b) *Cause of Deprivation Likely to Continue.* "In addition to evidence of present parental misconduct or inability, evidence of past conduct may be considered in determining whether the deprivation would be likely to continue."[6] Repeated incarceration preventing one from caring for a child indicates a likelihood of continued deprivation.[7] Patterns persist absent concerted adjustment, which is virtually nonexistent.

Clayton argues that his participation in various educational and life-skill building classes in prison is more recent and precludes a finding that the cause of deprivation will continue. Clayton began the prison programs only five weeks before the termination hearing. This late activity, while it will help him personally to structure a productive life for himself, does not negate the years of neglect of his boy. Considering even Clayton's positive efforts to improve himself, "the trial court must determine whether a parent's conduct warrants hope of rehabilitation."[8] Contra factors are that Clayton's brain functioning problem would make it improbable he could provide for the child and testimony that continued deprivation was likely. Sufficient evidence supported the court's finding.

(c) *Best Interest of the Child.* "Those same factors which show the existence of parental misconduct or inability can also support a finding that termination of parental rights of the defaulting parent would be in the child's best interest."[9] In addition to the evidence cited above, testimony showed B. C., a special needs child, crucially needed a structured, consistent, stable environment, that Clayton's incarcerations harmed the boy, that B. C. was thriving in foster care

---

[5] Compare *In the Interest of R. U.*, 223 Ga. App. 440, 441 (477 SE2d 864) (1996) (unincarcerated parents strove diligently to overcome personal problems and maintain regular and consistent contact with the child).

[6] (Citations and punctuation omitted.) *In the Interest of M. E. C.*, 228 Ga. App. 9, 13 (1) (c) (491 SE2d 107) (1997).

[7] *In the Interest of A. W.*, 231 Ga. App. 770, 774 (501 SE2d 22) (1998); *In the Interest of R. D. S. P.*, 230 Ga. App. 205, 207-208 (495 SE2d 867) (1998); see *K. W.*, supra, 233 Ga. App. at 143 (2) ("the past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. . . . The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact") (citation and punctuation omitted).

[8] (Citation and punctuation omitted.) *T. B. R.*, supra, 224 Ga. App. at 475; see *M. E. C.*, supra, 228 Ga. App. at 13 (attendance at five weeks of AA meetings just before the termination hearing was suspect); *In the Interest of M. N. L.*, 221 Ga. App. 123, 124 (1) (470 SE2d 753) (1996) (recent progress did not negate repetitive incarcerations); *In the Interest of J. M. C.*, 201 Ga. App. 173, 174-175 (410 SE2d 368) (1991) (recent progress did not overcome lengthy history of repetitive incarcerations).

[9] (Citations and punctuation omitted.) *M. E. C.*, supra, 228 Ga. App. at 14 (2).

in contrast to the listless state in which he arrived there, that B. C. was attached to his foster home, and that it would harm B. C. to remove him from the foster home. A rational trier of fact could find clear and convincing evidence that termination was in B. C.'s best interests.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 6, 1998.

*Jerry W. Moncus*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, William C. Joy, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Richard K. Murray*, for appellee.