A99A1279. IN THE INTEREST OF W. M. et al., children.
(521 SE2d 230)

McMURRAY, Presiding Judge.

The natural mother of W. M. and K. M. appeals from the judgment of the juvenile court terminating her parental rights. Viewed in the light most favorable to the juvenile court's judgment, the record reveals the following chronology:

On June 13, 1995, the Department of Family & Children Services ("DFACS") filed a petition with the Juvenile Court of Carroll County alleging that W. M., a minor male, and K. M., a minor female, were deprived due to the absence of proper parental care or control, subsistence and education as required by law. Temporary custody was placed with DFACS, and the Citizens Review Panel recommended the children continue in foster care, until March 25, 1997, when DFACS filed a complaint for termination of both natural parents' parental rights. With respect to appellant, the natural mother, the complaint alleged she was unable to provide necessary parental control, in that she could not protect the children from inappropriate physical discipline by the father. It was further alleged that the mother would not agree to leave the father, and that both parents were noncompliant and uncooperative with the caseworker and failed to meet the goals of the case plan.

In support of the allegations, Dana Sharp, the DFACS case manager since November 1996, explained that since the children were initially placed in foster care, both parents had goals to "develop coping strategies to manage [the children's] unruly behavior" while the parents learned to "release their feelings of frustration and anger in a non-threatening way." The parents were to attend parenting classes, attend mental health counseling, have psychological evaluations and maintain visitation. Sharp informed both parents that the Citizens Review Panel was already recommending termination of parental rights by November 1996, "but there was still time to work on their case plan goals." By then, appellant had begun seeing a Carroll County mental health counselor. In trying to locate the parents in order to reschedule a December visitation, Sharp was informed that appellant quit her job at the restaurant where she had been employed for four years. On December 12, 1996, the juvenile court ordered random drug tests of both parents, who became angry at this decision. Appellant canceled a scheduled visitation the next day and did not contact DFACS again until a hearing in May 1997, where appellant appeared and requested that Sharon Taylor, a relative in Ohio, be considered for placement of the two children. Pending the home evaluation of Sharon Taylor, appellant confirmed she had not submitted to a random drug test, claiming she was spending all her money on her car. Appellant missed a scheduled visitation in July 1997, because she had already moved to Ohio without informing her caseworker. In August, Sharp was informed that the Ohio home evaluation "had been denied." Appellant has not had any contact with her children since November 1996. Despite working up to three jobs, she has never contributed to the support of the children and has never sent cards or presents.

According to the evaluation of R. Dwain Blackston, M.D., the

child W. M. has an "attachment disorder, emotional immaturity, and . . . psychoenvironmental deprivation." The child needs "a structured home environment and a structured special needs preschool." The children have "made tremendous gains in their [foster] placement," and in Sharp's opinion, termination of parental rights is in the best interests of the children. Jeanette Smith, the foster mother, explained that when the children first came to her home, K. M. was normal, even very bright, but that W. M. had some behavioral problems. He was angry and violent and spoke in only two- or three-word sentences. In language skills, W. M. was two years behind his peers. But after therapy, W. M. is now "actually above his age level by one month." His inappropriate expressions of anger have diminished although they remain.

Appellant testified she has left her husband (who is in jail for driving under the influence) and offered proof that she was drug-free. But appellant could not confirm her drug tests were random. She stopped attending counseling because she thought her parental rights had already been terminated.

The juvenile court terminated the parental rights of both the natural father and appellant. She appeals, urging the evidence is insufficient. *Held*:

1. The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. "On appeal, 'this court neither weighs [the] evidence nor determines the credibility of witnesses; rather, we defer to the [juvenile] court's factfinding and affirm unless the appellate standard is not met.' " *In the Interest of R. D. S. P.*, 230 Ga. App. 205 (495 SE2d 867).

2. Termination of parental rights requires a clear and convincing showing that the children are deprived due to parental misconduct or inability which is likely to continue or is not likely to be remedied, thereby causing serious physical, mental, emotional, or moral harm to the children. *In the Interest of R. D. S. P.*, 230 Ga. App. at 206, supra. Lack of proper parental control may be shown by evidence of the parent's past physical, mental, or emotional neglect of the child or of another child. OCGA § 15-11-81 (b) (4) (B) (v). In addition, where the children are not in the custody of the parent whose rights are at issue, the juvenile court shall consider whether lack of proper parental care and control is demonstrated by proof that the parent, without justifiable cause, failed significantly for a period of one year or longer prior to the filing of the petition to terminate parental rights to communicate or make a bona fide attempt to communicate with the child or children in a meaningful supportive way or failed

significantly to comply with a court-ordered plan designed to reunite the child with the parents. OCGA § 15-11-81 (b) (4) (C) (i) and (iii); *In the Interest of K. S. W.*, 233 Ga. App. 144, 147-148 (1) (503 SE2d 376).

In the case sub judice, the juvenile court was authorized to conclude that appellant's complete failure to support her children or to maintain any consistent meaningful and supportive contact with them for the year preceding the filing of the termination complaint was neither reasonable nor justified. Also, appellant failed to comply with court-ordered random drug testing. There is an unappealed finding of deprivation regarding appellant's inability to protect W. M. from the inappropriate physical discipline of appellant's husband, and there is no assurance that appellant will not return to her husband after he gets out of jail. This evidence was sufficiently clear and convincing to authorize the juvenile court's determinations that the children were deprived and that such deprivation was likely to continue or likely would not be remedied. *In the Interest of J. M. B.*, 231 Ga. App. 875, 878 (1) (b), (c) (501 SE2d 259).

*Judgment affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED JULY 26, 1999.

*Doris C. Orleck*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Price & Pyles, Thomas C. Pyles*, for appellee.