527 S.E.2d 633 (2000)
241 Ga. App. 805
In the Interest of H.D.M., a child.
No. A99A2498.
Court of Appeals of Georgia.
January 12, 2000.
*634 Larry H. Tatum, Norcross, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Laura W. Hyman, Assistant Attorneys General, John L. Welsh II, Lawrenceville, for appellee.
*635 ELLINGTON, Judge.
Appellant Daniel McClung, the father of H.D.M., appeals from the juvenile court's order terminating his parental rights. McClung challenges the sufficiency of the evidence, venue, and the juvenile court's consideration of certain evidence. Finding no error, we affirm.
1. The standard of review applicable to McClung's challenge to the sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) In the Interest of A.C., 230 Ga. App. 395, 396(1), 496 S.E.2d 752 (1998). "[W]e defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Citations and punctuation omitted.) In the Interest of S.N.N., 230 Ga.App. 109, 495 S.E.2d 602 (1998).
OCGA § 15-11-81(a) sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81(a). Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-81(b)(4)(A)(i)-(iv). If the trial court finds that these four factors exist, then in the second step the court determines whether termination of parental rights is in the best interest of the child. In the Interest of D.A.P., 234 Ga.App. 257, 259(2), 506 S.E.2d 438 (1998).
As to the first factor, we agree with the juvenile court's determination that the child was deprived. Both the child and her mother tested positive for marijuana and methamphetamine when H.D.M. was born on April 6, 1997. The child was judicially determined to be deprived and was taken into custody two days later. See In the Interest of A.W., 231 Ga.App. 770, 773, 501 S.E.2d 22 (1998); In the Interest of R.D.S.P., 230 Ga. App. 205, 206, 495 S.E.2d 867 (1998). Since no appeal was taken from the deprivation order, McClung is bound by the initial deprivation finding. In the Interest of L.H., 236 Ga.App. 132, 134(1), 511 S.E.2d 253 (1999). Furthermore, McClung stipulated that the child was deprived. Therefore, the first factor is satisfied.
As to the second factor, we agree with the juvenile court's determination that the child's deprivation was caused by McClung's lack of proper parental care or control. McClung argues that the initial deprivation was attributable entirely to the mother's actions, that is, ingesting drugs while pregnant, and not to his own parental misconduct or inability. In determining whether the child's deprivation was caused by McClung's lack of proper parental care or control, however, the juvenile court was authorized by statute to consider McClung's actions following the original finding of deprivation. When the child is not in the custody of the parent whose rights are at issue, OCGA § 15-11-81 directs the trial court to consider whether the parent without justifiable cause failed significantly for a period of one year or longer (1) to communicate or make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner; (2) to provide for the care and support of the child; and (3) to comply with a court-ordered plan to reunite the child with the parent. OCGA § 15-11-81(b)(4)(C).
At the emergency hearing held four days after the child's birth, McClung, who was present and represented by counsel, was directed to take steps to legitimate the child. McClung did not legitimate the child until she was six months old. McClung visited the child five times in the first six months, before legitimation, and three times after legitimation. He last visited the child 11 months before the termination hearing. In the Interest of R.P., 216 Ga.App. 799, 802-803(2), 456 S.E.2d 107 (1995). There is no evidence that McClung attempted to contact anyone to arrange additional visits. In the Interest of *636 D.A.P., 234 Ga.App. at 259-260, 506 S.E.2d 438. In short, McClung demonstrated very little interest in H.D.M. during the year prior to the parental rights termination hearing.
The juvenile court was also authorized to consider in determining whether the child's deprivation was caused by McClung's lack of proper parental care or control whether McClung had a history of chronic unrehabilitated drug abuse which rendered him "incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-81(b)(4)(B)(ii). In the Interest of K.W., 233 Ga.App. 140, 141-142(2), 503 S.E.2d 394 (1998). The juvenile court found that McClung has a long history of drug abuse, and McClung offered no evidence to rebut that finding. Furthermore, he offered no evidence that he had complied with the treatment recommendations that were incorporated into the reunification plan.
Finally, lack of proper parental care or control can also be shown by a parent's failure to complete the goals of a reunification plan. In the Interest of I.S., 238 Ga. App. 304, 308, 520 S.E.2d 470 (1999). There was ample evidence that McClung failed to complete most goals of the reunification plan. Based on McClung's delayed legitimation of the child, his limited contacts with her, his history of drug abuse, and his failure to complete the goals of the reunification plan, there was clear and convincing evidence that H.D.M.'s deprivation was caused, in part, by McClung's lack of proper parental care or control.
We also uphold the trial court's finding that H.D.M.'s deprivation would likely continue if McClung retained parental rights. "In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent." In the Interest of R.D.S.P., 230 Ga.App. at 207, 495 S.E.2d 867. Although McClung asserts on appeal that he is a fit parent, he gave no testimony at trial and offered no evidence demonstrating an ability to maintain a drug-free lifestyle, to provide for his child's material needs, and otherwise to provide proper parental care and control so that the previous deprivation would not continue.
Finally, the record supports the trial court's conclusion that continued deprivation is likely to harm H.D.M. H.D.M. has spent her entire life in foster care and has formed no bond with McClung. "This evidence supports a finding that [H.D.M.] would suffer serious harm if returned to [McClung]." In the Interest of A.C., 230 Ga.App. at 398, 496 S.E.2d 752.
As for the second prong of the termination analysis, we are persuaded that the termination of McClung's parental rights is in the best interest of H.D.M., considering H.D.M.'s physical, mental, emotional, and moral condition and her "need for a secure and stable home." OCGA § 15-11-81(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Punctuation omitted.) In the Interest of C.L.R., 232 Ga. App. 134, 138(2), 501 S.E.2d 296 (1998).
2. McClung contends that the trial court improperly relied on hearsay evidence in finding that termination of his parental rights was warranted. One of the caseworkers had never met McClung and testified based on what appeared in the Department of Family & Children Services's case records rather than based on her personal knowledge. During that witness's testimony, however, McClung never raised a hearsay objection. Thus, McClung waived this issue by his failure to object to the evidence at trial. In the Interest of M.L.P., 236 Ga.App. 504, 510(2), 512 S.E.2d 652 (1999); Hodson v. Mawson, 227 Ga.App. 490, 491(1), 489 S.E.2d 855 (1997).
3. We further find that McClung waived any objection to venue of the termination case in Gwinnett County. The record shows that the Gwinnett County DFACS took custody of H.D.M. because her mother gave the caseworkers a Buford, Gwinnett County, address as her residence. All proceedings for two years, beginning with the initial deprivation hearing and including the termination hearing, were conducted in Gwinnett County based on the child's presence there. OCGA § 15-11-15. McClung *637 was present and represented by counsel at hearings held in Gwinnett County to address H.D.M.'s deprived status on April 10, 1997, June 19, 1997, October 23, 1997, and March 30, 1998. McClung filed a petition to legitimate H.D.M. in Gwinnett County. He raised no objection to Gwinnett County venue until the termination hearing on April 28, 1999.
Although the record at the hearing shows that McClung and H.D.M.'s mother lived together in Bartow County beginning in October 1997, McClung claims that he did not know until the April 28, 1999 hearing that the mother was living in Bartow County when the child was born. This is not a situation in which the factual basis for the objection to venue arises after the commencement of proceedings. See, e.g., Fosgate v. American Mut. &c. Ins. Co., 154 Ga.App. 510-511(1), 268 S.E.2d 780 (1980). By his actions and inactions, McClung waived his right to object to Gwinnett County venue. See Holcomb v. Ellis, 259 Ga. 625, 626(2), 385 S.E.2d 670 (1989).
Judgment affirmed.
ANDREWS, P.J., and RUFFIN, J., concur.