## A98A0701. MOCK v. SMITH.
### (503 SE2d 319)

SMITH, Judge.

We granted this discretionary appeal to determine whether the trial court correctly ruled that Georgia had no jurisdiction to decide this action for modification of child custody. Upon review, we conclude that Georgia does have jurisdiction. We therefore reverse the trial court's dismissal of the action.

The facts are not in dispute. Dennis Mock and Barbara Smith were formerly married, and they are the parents of two children, both of whom presently are over fourteen years of age. Mock and Smith were divorced in Georgia in 1984, and Smith was granted sole custody of the children. Both parents have remarried. Mock resides in Bainbridge, as he has for at least the past 27 years. Smith's husband is in the U. S. Marine Corps. He was stationed in Yuma, Arizona for approximately three and one-half years prior to the commencement of this action. The children left Arizona to visit with their father, Mock, on June 14, 1997, for regularly scheduled summer visitation. On July 9, 1997, while the children were in Georgia, Mock filed this action. Attached to Mock's petition were affidavits from both children stating that they were over the age of 14 and that they were electing to live with their father in Georgia. Both children also testified at the hearing that they wanted to live with their father. Smith was personally served in Georgia while she and her husband were in Bainbridge on leave visiting her mother. They were in the course of a transfer from Yuma, Arizona to their new station in Twenty-Nine Palms, California. Smith testified that when she was served she and her family no longer lived in Arizona, although she intended to go back there to pick up the children at the airport and take them to their next duty station, in California. But they had not yet moved to California and had no address there when this action was commenced. At the time of the hearing, the family had moved to California and had an address there.

OCGA § 19-9-43 sets forth several bases for a court of this state to assume jurisdiction for the purpose of making a child custody determination. It provides that a court may do so if: (1) this state is

the "home state" of the child at the time the proceeding is commenced or if it had been the child's home state within six months prior to the commencement of the action *and* the child is absent from this state because the child was removed or retained by a person claiming custody or for other reasons *and* one of the parents continues to live here; or (2) if it is in the child's best interest that this state assume jurisdiction either because (a) the child and at least one parent have a significant connection with this state and substantial evidence is available here bearing on "the child's present or future care, protection, training, and personal relationships"; (b) the child is physically present here and has been abandoned or an emergency exists; or (c) no other state would have jurisdiction. "Home state" is defined in OCGA § 19-9-42 (5) as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent for at least six consecutive months."

Georgia courts have generally shown a preference for litigating custody issues in a child's "home state." *Williams v. Goss*, 211 Ga. App. 195, 196 (438 SE2d 670) (1993). But as stated in *Goss*, "the appellate courts of this state also have recognized that in appropriate cases the state which made the initial custody determination may be the appropriate forum in which to relitigate subsequent custody matters even though that state is no longer the home state of the minor children. [Cits.] . . . This is referred to as 'continuing jurisdiction' under the PKPA [Parental Kidnapping Prevention Act]. See USCA § 1738A (d). However, under both the UCCJA and PKPA, a state must have jurisdiction under its own laws before it can modify a decree previously entered in that state."[1] Id. at 196-197. See also *Garrett v. Garrett*, 267 Ga. 356, 357 (477 SE2d 804) (1996).

Smith correctly points out that in *Goss*, this Court reversed the Georgia trial court's assumption of jurisdiction under "significant connection" reasoning based upon the election of the child, who was over 14 years of age, to live with his Georgia resident father. But in *Goss*, the trial court based its jurisdiction *solely* on the child's election to live with the father, reasoning that because the child had the right to elect to live with his father unless the father was an unfit parent, any custody litigation would necessarily focus upon the father's fitness and evidence pertaining to that issue would be more available in Georgia. *Goss*, supra at 197. On appeal, our reversal was premised on the determination that a child's election to live with a Georgia resident parent cannot form the *sole* basis for "significant connection" jurisdiction under the UCCJA. "Such 'bootstrapping' would not

---

[1] In *Wilson v. Gouse*, 263 Ga. 887, 889 (441 SE2d 57) (1994), the Supreme Court held that the PKPA applies to all interstate child custody disputes regardless of whether a child has been kidnapped.

appear to be consistent with the overall spirit and purpose of the UCCJA, which seeks to assure that custody proceedings take place in the state with which the child and his family have the closest connections." (Citations and punctuation omitted.) Id. at 197-198.

In *Goss*, Tennessee was clearly the home state of the child and no reason existed that the issue of custody could not be litigated there. In this case, we need not decide whether Arizona is the children's "home state," as urged by Smith; even if we assume that Arizona is technically the children's "home state" within the meaning of OCGA § 19-9-42 (5), it would be illogical and impractical to insist upon litigating this dispute in Arizona, where *none* of the parties presently resides. No other state meets the definition of "home state." The family had not lived in California for six months at the time of the hearing. And although California presumably would be a practical forum for Smith, very little evidence concerning the children's present or future existed there because at the time of the hearing, the children had never lived there.

In this case, the children and Mock have a "significant connection" with Georgia even apart from the children's election to live with their father. They have lived here with their father every summer since 1986, Mock has lived here continuously, and the children have both maternal and paternal grandparents here, as well as other relatives and friends. "Substantial evidence" is available in Georgia bearing on the children's past and future activities, relationships, and care. Given that the children were present in this state and were over 14, that an Arizona forum made no sense for any of the parties, and that no other state had jurisdiction, we conclude that the trial court erred in dismissing Mock's petition on the ground that it lacked jurisdiction.

*Judgment reversed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 22, 1998.

*Mary L. Ward*, for appellant.
*Kirbo & Kendrick, Bruce W. Kirbo*, for appellee.