## A99A0527. MEZQUITA v. CAMPBELL.
### (519 SE2d 27)

POPE, Presiding Judge.

We granted the discretionary application in this child custody action to review the Liberty County Superior Court's judgment awarding custody to the child's father, appellee Joseph Campbell. Upon review of the record, we conclude that the Georgia court lacked jurisdiction, and we reverse.

Appellant Yolanda Mezquita is the mother of the minor son, who was born on August 12, 1996, in Hinesville, which is in Liberty County, Georgia. Mezquita and Campbell did not marry each other. On January 7, 1998, Campbell filed a petition for custody against Mezquita, a resident of Florida, in Liberty County Superior Court. In the custody petition, Campbell acknowledged that although he previously had filed a petition for legitimation of the child in Effingham County,[1] the matter had not been resolved at the time he filed the custody petition. In fact, in the custody petition Campbell admitted that the petition for legitimation had not been successfully served on Mezquita. The custody petition alleged that Campbell was attempting to serve Mezquita by publication.

On the same date as the filing of the custody action, the court issued an order directing that Mezquita be served with the custody petition by publication. The order also directed that the clerk send a copy of the complaint to two addresses which Mezquita previously had maintained, both of which were in Florida.

On March 12, 1998, the Effingham County Superior Court entered an order in which it declared the child to be Campbell's legitimate son.

On April 3, 1998, the Liberty County Superior Court issued an order awarding Campbell custody of the child. In so doing, the court

---

[1] Campbell, a resident of Rincon, Georgia, which is in Effingham County, properly filed the petition for legitimation in the county of his own residence. See OCGA § 19-7-22.

concluded that the appropriate service procedures of OCGA §§ 19-9-45 (a) (3) and (4) and 9-11-4 had been followed. The court found that Campbell had established paternity and that the child had been legitimated. The court found that Mezquita had moved at least seven times since the child's birth and that she had abandoned two residences in deplorable conditions.

Four days after judgment was entered, Mezquita filed a motion to set it aside. The court held an extensive hearing on the matter and entered an eight-page order in which it vacated its prior order. The court concluded that under OCGA § 19-7-25 Campbell did not have standing to bring the custody suit until after the order of legitimation; the court therefore allowed Mezquita 30 additional days in which to file defensive pleadings. The court also found that Mezquita moved from Georgia to Florida in July 1997; that the child was conceived, born and christened in Georgia; that Mezquita maintained substantial connections to a church in Georgia; and that she received child support from a Georgia agency. Furthermore, the court recounted its interactions with the Florida Department of Children & Family Services and Mezquita's "evasive and uncooperative" behavior with an investigator from that agency. The court found that Mezquita admitted that she received notice that she had certified mail to claim, and that she simply failed to claim it. Accordingly, the court concluded that it had jurisdiction under OCGA § 19-9-43 (a) (2) and that Mezquita had refused to accept service of the notice. The court ordered that the custody of the child would be with the Georgia Department of Family & Children Services until further order of the court.

On May 28, 1998, Mezquita filed an answer to the custody petition in which she moved the court to dismiss Campbell's action. On the same day, the court held another hearing on the matter.

On August 3, 1998, the court entered an order in which it again awarded custody to Campbell. The court concluded that it had jurisdiction of the matter; that Mezquita was unfit to have custody of the child; and that Campbell was entitled to custody. From that determination, Mezquita filed the discretionary application.

1. Mezquita first argues that the Georgia court lacked jurisdiction. We agree and reverse.

Evidence before the court showed that Mezquita and Campbell began their relationship in south Florida in 1994 when they were both living there. They lived together for more than a year. In the summer of 1995 Campbell moved to Georgia and Mezquita remained in south Florida. On a visit to see Campbell in Georgia in 1995, Mezquita became pregnant with the child; she moved to Hinesville, Georgia, in December 1995. The child was born on August 12, 1996, in Hinesville.

Six days after having the baby, Mezquita returned to Florida for a visit with the infant for three months. After three months, Mezquita returned to Georgia with the child, and she and the child lived in Hinesville, Georgia, for the next eight months. Mezquita and the child returned to Florida on July 12, 1997, when the child was 11 months old. Mezquita and the child lived in Florida for the following nine months until the child was removed by the court from Mezquita in April 1998.

There was evidence that Mezquita had worked at the same job in a Florida accounting office from August 1997 until the May 28, 1998 hearing. There was evidence that the child had a babysitter who was in Florida and that Mezquita had recently enrolled the child in a day-care center. The evidence showed that the child's most recent medical treatments were in Florida and that the child had been issued a Florida Certificate of Immunization. There was evidence that Mezquita's two older children lived in Florida and that Mezquita had a grandmother and aunts and uncles residing in Florida. One of the witnesses at trial was a Florida caseworker who had become involved in the case at the behest of the court after the April 3 hearing. That witness testified that Mezquita had been investigated by the same Florida agency in 1996.

Campbell filed his custody action on January 7, 1998 — within six months of July 12, 1997, the date Mezquita moved with the child from Georgia. OCGA § 19-9-43 (a) (1) (B) provides that a Georgia court which is competent to decide child custody matters has jurisdiction if Georgia was the child's home state within six months before commencement of the proceeding and the child was removed by one parent while another parent remained in Georgia. Ordinarily, under OCGA § 19-9-43 (a) (1) (B), jurisdiction in Georgia would be proper.

Nevertheless, in this case, Campbell lacked standing in January to file the custody suit because he had not legitimated the child. OCGA § 19-7-25 provides: "[o]nly the mother of a child born out of wedlock is entitled to his custody, unless the father legitimates him as provided in Code Section 19-7-22." "Upon legitimation the father stands in the same position as any other parent as to custody of the child. *Sims v. Pope*, 228 Ga. 289, 291 (185 SE2d 80) [(1971)]." *Kennedy v. Adams*, 218 Ga. App. 120 (1) (460 SE2d 540) (1995) (physical precedent only). This Court previously has held that "custody issues may be adjudicated in a legitimation proceeding — but only with the consent of the parties. In the absence of the mother's consent, if the father wishes to petition for a change in physical custody, he must do so in a separate proceeding after the judgment of legitimation is entered." *Palmer v. Pinkston*, 228 Ga. App. 514, 515 (2) (492 SE2d 285) (1997). See also *Gregg v. Barnes*, 203 Ga. App. 549, 550 (1) (417 SE2d 206) (1992) (physical precedent only).

The superior court concluded, and we agree, that the filing date of the complaint for custody was not dispositive of the jurisdictional inquiry because Campbell did not have standing on that date to file the complaint. We therefore analyze the jurisdictional basis from the date on which the order legitimating the child was entered — March 12, 1998. This date was outside the six-month period provided for in OCGA § 19-9-43 (a) (1) (B).

> Ordinarily, jurisdiction over child custody cases is in the county of residence of the legal custodian, and one of the purposes of the . . . UCCJA [Uniform Child Custody Jurisdiction Act] is to assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available and also to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; and the UCCJA shall be construed to promote its general purposes. [(Citations and punctuation omitted.)] *Lightfoot v. Lightfoot*, 210 Ga. App. 400, 402 (2) (436 SE2d 700) (1993). In other words, the UCCJA favors the hearing of custody matters in a child's home state, "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent for at least six consecutive months." OCGA § 19-9-42 (5).

*Rozier v. Berto*, 230 Ga. App. 427, 428 (496 SE2d 544) (1998).

In the order in which it vacated the award of custody to Campbell, the trial court concluded that jurisdiction was proper under OCGA § 19-9-43 (a) (2). That section states that a Georgia court which is competent to decide child custody matters has jurisdiction to make the custody determination if

> [i]t is in the best interest of the child that a court of this state assume jurisdiction because: (A) The child and his parents or the child and at least one contestant have a significant connection with this state; and (B) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

"[I]n considering whether the trial court properly assumed jurisdiction over this case under OCGA § 19-9-43 (a) (2), we must consider that Code section in light of the stated purposes of the act." *Lightfoot*

*v. Lightfoot*, 210 Ga. App. at 402.

Although under OCGA § 19-9-43 (a) (2), the residence of the father is relevant, in this case, Campbell's status as the father was not established until March 1998. Thus, the significance of his Georgia residence in our determination is minimized and the importance of Mezquita's and the child's home state, Florida, becomes more important. Campbell's argument that the availability of evidence in Georgia regarding his fitness as a parent justifies jurisdiction here is akin to the "bootstrapping" attempts which the court rejected in *Williams v. Goss*, 211 Ga. App. 195, 197 (438 SE2d 670) (1993). In that case, the court stated that "[s]uch 'bootstrapping' would not appear to be consistent with the overall spirit and purpose of the UCCJA, which seeks to assure that custody proceedings take place in the state with which the child and his family have the closest connections." (Citations and punctuation omitted.) Id.

In this case Florida is the state with the closest connections to the child and his family. While we recognize that Campbell paid child support for four months through a Georgia agency, and that Mezquita had some contacts with Georgia, the greater contacts were with Florida. The evidence is undisputed that the child's and the mother's home state was Florida and Florida was the appropriate forum for this dispute. Compare *Mock v. Smith*, 233 Ga. App. 36 (503 SE2d 319) (1998). Accordingly, the court erred in concluding that it had jurisdiction and in denying Mezquita's motion to dismiss.

2. Because of our resolution of the jurisdictional arguments, we need not address Mezquita's other arguments.

*Judgment reversed. Smith and Eldridge, JJ., concur.*

DECIDED JUNE 2, 1999 — CERT. APPLIED FOR.

*Gary A. Bacon*, for appellant.
*Lloyd D. Murray & Associates, Dena W. Gardner*, for appellee.

