A99A1755. IN THE INTEREST OF R. H. et al., children.
(524 SE2d 257)

MCMURRAY, Presiding Judge.

The father of R. H. and L. H. appeals from the termination of his parental rights.[1] The juvenile court's findings reveal that the father is an undocumented Iranian immigrant; that the father pleaded guilty for distributing cocaine in 1989; that the father jumped bond and fled the United States before he could be sentenced for this offense; and that the father thereafter moved to Japan, Iran, Romania and then Canada. The father was detained in Canada about seven years later and returned to the United States where he is serving a federal prison sentence for the 1989 cocaine distribution offense. He is not due to be released from prison until after the year

---

[1] Although the mother's parental rights were also terminated, she is not a party to this appeal.

2000. And according to an officer with the United States Immigration & Naturalization Service, the father will be subject to deportation under federal law (8 USC §§ 1228 and 1229) when he is released from prison based on his conviction for distributing cocaine and his status as an illegal alien.

The children have not seen the father for almost ten years. L. H. was two years old when the father left, and R. H. was an infant. Neither child can remember the father well, if at all, and neither child recognized him in a photograph. The father rarely communicated with the children while he was on the run, and even though the father admits that he was employed during this time, the father did not provide the children with any regular or meaningful support. The father sent only a few hundred dollars for the children on a couple of occasions during his seven-year flight from justice, and he has sent less than $50 for their support since 1997.

After the father was apprehended in Canada in 1997, he did not comply with a court-ordered case plan that was based on a goal for family reunification. And while the father asserts that his imprisonment renders it impossible for him to comply with most of this plan, it is undisputed that the father did not comply with an element of the plan that he could have accomplished from prison — the goal for regular monthly contact with the children. Rather than communicating with the children on a monthly basis, the father sent eight randomly posted letters to the children during their thirty-five-month stay in protective custody.

While the father was on the run, the children's mother lost control of her life. She became a drug addict and has been in and out of jail for various offenses. In the meantime, the children were left with relatives who could not or would not provide for them. L. H. testified to being sexually abused during this time, and R. H. remembered watching adults with illegal drugs in his presence. When it was discovered that the children were not attending school in January 1997, they were committed to the custody of the Department of Family & Children Services ("DFACS"). The children are now in foster care, attending school and are doing well. Both children explained that they are aware of their father, but neither expressed a desire to be placed in his custody. *Held*:

1. DFACS's motion to strike the father's enumeration of errors and brief is hereby denied.

2. The father contends the juvenile court erred in terminating his parental rights, arguing that there is not clear and convincing proof that he failed to communicate or make a bona fide attempt to communicate with the children; that he failed to care and support the children, and that he failed to comply with the court-ordered plan for family reunification. The father explains he left the children in 1990

because he loved them too much to be separated from them by imprisonment; that this love drove him overseas to carry out his own plan for family reunification, but that this plan was thwarted by the treachery and misdeeds of the children's mother and other family members.

The father's motives for his actions are not the controlling issue. When considering whether to terminate parental rights, the juvenile court must first determine whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-81 (a). This determination is made by finding that the children are deprived, that the cause of this deprivation is lack of proper parental care or control, that the cause of deprivation will likely continue, and that the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. OCGA § 15-11-81 (b) (4) (A). When determining whether children are without proper parental care and control, the juvenile court is authorized to consider any felony conviction by the parent which has a demonstrable negative effect on the quality of the parent-child relationship. OCGA § 15-11-81 (b) (4) (B) (iii). Upon a showing by clear and convincing evidence of such parental misconduct or inability, the juvenile court is authorized to then consider whether termination of parental rights is in the best interest of the children. OCGA § 15-11-81 (a).

Although criminal conviction and incarceration do not always compel termination of parental rights, serving time as a convicted felon will support a termination of parental rights when adequate aggravating circumstances are shown to exist — such as failure to comply with goals for family reunification or failure to provide parental care and support. *In the Interest of B. M. L.*, 239 Ga. App. 511 (521 SE2d 448). Not only are both these aggravating circumstances present in the case sub judice, but the father's status as a convicted felon and a nonresident alien renders it likely that he will be forced out of the United States when he is released from prison and that he will thus be unable to provide the children with proper parental care and control. On the other hand, it appears undisputed that R. H. and L. H. are now in a stable and well-adjusted home environment; that both children are doing well in school; and that a large uncertainty has been lifted in their lives — whether their father will interfere with their hopes for being kept together in a stable home environment. Contrary to the father's explanations for his past parental shortcomings, the father's criminal history, his illegal presence in the United States, his failure to support the children while he was a fugitive from justice, his disrespect for this country's system of criminal justice, and his current justification for disregarding the law and his parental responsibilities provide clear and convincing proof that R. H.'s and L. H.'s deprivation is likely to continue even after the father

is released from prison. See *In the Interest of C. L. R.*, 232 Ga. App. 134, 138 (1) (c) (501 SE2d 296); *In the Interest of S. N. N.*, 230 Ga. App. 109, 110 (1) (495 SE2d 602).

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED OCTOBER 28, 1999 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Ninfo & Ledbetter, Mario S. Ninfo*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Sheri E. Capes*, for appellees.