548 S.E.2d 11 (2001)
248 Ga. App. 788
In the Interest of D.T.C., a child.
No. A01A0036.
Court of Appeals of Georgia.
March 28, 2001.
B. Samuel Engram, Jr., Albany, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, *12 Asst. Atty. Gen., Paula T. Hanington, Albany, for appellee.
BARNES, Judge.
The Juvenile Court of Dougherty County terminated the parental rights of the father of D.T.C. The father appeals, arguing that the juvenile court's decision was not supported by clear and convincing evidence. For the reasons that follow, we affirm.
In reviewing the father's challenge to the sufficiency of the evidence, we determine whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found by clear and convincing evidence that the natural father's rights to custody have been lost. In the Interest of A.C., 230 Ga.App. 395, 396(1), 496 S.E.2d 752 (1998). We do not weigh the evidence or determine witness credibility, but defer to the juvenile court's factfinding. In the Interest of L.H., 236 Ga.App. 132, 133(1), 511 S.E.2d 253 (1999).
Viewed in this light, the evidence shows that D.T.C. was born on July 16, 1992. On July 3, 1996, when he was only about four years old, he was found wandering in a mall by himself for two hours. A caseworker with the Department of Family & Children Services ("DFACS") testified that his mother was located several hours later and the child was returned to her. A week later, on July 10, 1996, the DFACS responded to a call and found D.T.C. wandering alone in his neighborhood. DFACS took him into custody, discovered that his mother had been arrested and his father was also in jail, and placed him in foster care.
The father testified that he contacted D.T.C.'s caseworker when he was released from prison in January 1997. The caseworker prepared the paperwork to allow the father to get D.T.C. from foster care every Saturday. After two and a half months, the caseworker received information that the father was taking D.T.C. to a "drug-infested area" during his visits and testified that when she asked the father about it, he offered no response. After that time, the father was allowed to visit every Saturday at the foster parent's home until he was incarcerated again for a probation violation in May 1998. He was incarcerated at the time of the termination hearing in February 2000 and testified that he expected to be released the next month.
While the father's "old lady," to whom he was engaged, sent him $50 a week for spending money while he was in jail, he provided no financial support for the child, sent no cards or gifts while he was in prison, and called only once. The caseworker further testified that the father had not completed his case plan to be reunited with his son and, being incarcerated, had no stable home to provide for the child. Further, he never legitimated D.T.C.
The juvenile court took judicial notice of its previous orders in the case and terminated the father's parental rights in an order dated April 6, 2000.[1] The court noted that the father's "felony incarceration has had a demonstrable negative effect on the child and is illustrative of his past and present parental unfitness." The father had not supported the child financially, despite a child support order from superior court; had not parented the child; and had not attempted to legitimate the child until receiving notice of the termination petition. Further, he never sought to "have a meaningful parental presence in the life of the child." The juvenile court found "clear and convincing evidence of past, present and likely future parental indifference and unfitness" of the father. The court concluded that it would be in D.T.C.'s best interest to terminate the natural father's parental rights, considering that the child was nearly eight years old, had been in foster care since he was three, and needed to move forward toward a permanent and secure home.
On appeal, the father enumerates three errors, arguing the juvenile court erred in finding that the evidence showed present clear and convincing evidence of his misconduct or inability, in terminating the father's *13 rights because of his incarceration, and in terminating his rights based on his failure to support the child.
1. Determining whether parental rights should be terminated involves a two-step analysis. In the first step, the court must find parental misconduct or inability. That finding must be supported by clear and convincing evidence that: (i) the child is deprived; (ii) lack of proper parental care or control caused the deprivation; (iii) the cause of the deprivation is likely to continue; and (iv) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. Former OCGA § 15-11-81(b)(4)(A)(i)-(iv) (now OCGA § 15-11-94(b)(4)(A)(i)-(iv));[2]In the Interest of L.H., supra, 236 Ga.App. at 132-133(1), 511 S.E.2d 253. Further, "[e]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in [his] natural child; clear and convincing evidence of present unfitness is required." (Citations, punctuation and emphasis omitted.) In the Interest of R.A., 226 Ga.App. 18, 20, 486 S.E.2d 363 (1997); see also In the Interest of D.C.N.K., 232 Ga.App. 85, 90, 501 S.E.2d 268 (1998).
If these four factors exist, then the court must take the second step and determine whether terminating parental rights is in the best interest of the child, considering the child's physical, mental, emotional and moral condition and needs, including the need for a secure, stable home. Former OCGA § 15-11-81(a) (now OCGA § 15-11-94(a)).
We review the evidence in the light most favorable to the State to determine whether a rational trier of fact could have found by clear and convincing evidence that the natural father's right to custody has been lost. In the Interest of A.C., supra, 230 Ga.App. at 396, 496 S.E.2d 752.
2. In this case, ample clear and convincing evidence of the four factors established parental misconduct or inability.
(a) First, the evidence showed that D.T.C. was a "deprived" child. A deprived child is defined as a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [his] physical, mental, or emotional health or morals." OCGA § 15-11-2(8)(A).
The definition of a deprived child, as contained in OCGA § 15-11-2(8), focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue.
(Citation, punctuation and emphasis omitted.) In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997). Based on the facts outlined above, sufficient clear and convincing evidence supports the juvenile court's finding that D.T.C. was deprived.
(b) The second factor to consider is whether the father's lack of parental care or control caused D.T.C.'s deprivation. The evidence presented at the termination hearing showed that the father's presence in D.T.C.'s life was minimal at best. Even during the 18 months he was not incarcerated, the only thing the father did was visit with the child. While he was incarcerated, he literally did nothing to stay in contact with the child.
In determining whether the child is without proper parental care and control, the court shall consider ... [the] [c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship.
OCGA § 15-11-81(b)(4)(B)(iii).
Although criminal conviction and incarceration do not always compel termination of parental rights, serving time as a convicted felon will support a termination of parental rights when adequate aggravating circumstances are shown to existsuch as failure to comply with goals for family reunification or failure to provide parental care and support.
*14 In the Interest of R.H., 240 Ga.App. 551, 553(2), 524 S.E.2d 257 (1999).
These aggravating circumstances may include a criminal history of repetitive incarcerations for the commission of criminal offenses or parole violations, which constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue.
(Punctuation, footnote and emphasis omitted.) In the Interest of B.C., 235 Ga.App. 152, 154, 508 S.E.2d 774 (1998). We conclude that clear and convincing evidence supports the conclusion that the father's lack of parental care or control caused D.T.C.'s deprivation, that sufficient evidence of present unfitness was shown, and that the trial court did not terminate the father's parental rights based solely on his incarceration, but properly considered it as a factor.
(c) Third, in determining whether the child's deprivation is likely to continue, the juvenile court may consider the parent's past conduct. In the Interest of A.C., 234 Ga.App. 717, 719, 507 S.E.2d 549 (1998). Sufficient clear and convincing evidence supports the juvenile court's finding that D.T.C.'s deprivation is likely to continue.
(d) Fourth, clear and convincing evidence showed that continued deprivation likely would harm D.T.C. Based on the evidence of the father's past behavior and his inability to comply with significant requirements of the reunification plan, we find that a rational factfinder could have found by clear and convincing evidence that D.T.C.'s continued deprivation would have a detrimental effect on him.
3. As to the second prong of the termination analysis, the evidence also was sufficient to show that termination of the father's parental rights was in D.T.C.'s best interest. We have held that "the court may consider the child's need for a stable home environment and the detrimental effects of prolonged foster care. Children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Citations omitted.) In the Interest of J.O.L., 235 Ga.App. 856, 858, 510 S.E.2d 613 (1998). Here, the evidence showed that D.T.C. was eight, had been in foster care since he was three, and needed a permanent home. In addition, the same factors that show the father's inability to care for his child support a finding that termination of parental rights would be in D.T.C.'s best interest. Id. Accordingly, we affirm the order of the juvenile court terminating the parental rights of D.T.C.'s father.
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] The juvenile court also terminated the parental rights of D.T.C.'s mother, who is not a party to this appeal.
[2] The 2000 amendment, Ga. L.2000, p. 20, § 1, reorganized, redesignated and renumbered Chapter 11 of Title 15. Former OCGA § 15-11-81 is now OCGA § 15-11-94. The amendment took effect on July 1, 2000, however, and this case was decided April 6, 2000, prior to its effective date.