563 S.E.2d 141 (2002)
254 Ga. App. 430
In the Interest of B.A.S., a child.
Johnson
v.
Stills et al.
Nos. A01A2174, A02A0148.
Court of Appeals of Georgia.
February 11, 2002.
Reconsideration Dismissed March 26, 2002.
Certiorari Denied June 10, 2002.
*144 Steven B. Trainer, pro se.
Bernadette C. Crucilla, Joyce D. Colmar, Kathryn J. Jaconetti, for appellant (case no. A02A0148).
Husser & Frazier, Genevieve L. Frazier, Mabry & McClelland, Edwin L. Hamilton, for appellees. *142
*143 RUFFIN, Judge.
These two appeals concern a Houston County Juvenile Court's order terminating Steven Trainer's parental rights in B.A.S. and a Fulton County Superior Court's order granting the petition of Terry and Christal Stills to adopt the child. The case has a long and contentious history that is partially discussed by the Supreme Court of Georgia in Stills v. Johnson.[1] We consolidated the two appeals, which share a common background, to finally resolve the issues and bring certainty and stability to the lives of the child and the other parties. For reasons that follow, we affirm the termination order and the order granting the Stillses' adoption petition.
*145 As revealed in Stills, B.A.S. was born out of wedlock to Cassandra Stills and Trainer in February 1994, only days after Trainer was arrested and charged with committing numerous crimes. Trainer was eventually sentenced to serve two consecutive ten-year sentences,[2] but legitimated the child. Cassandra Stills died in August 1997, and at that time her mother, Doris Stills, and Trainer began contending for custody of B.A.S.
After Cassandra died, B.A.S. went to live with Doris Stills, who was appointed his temporary legal guardian by the Probate Court of Houston County. Trainer objected to the guardianship, however, and attempted to transfer custody to his mother, Gertrude E. Johnson, a New Jersey resident. To accomplish this goal, Trainer executed a document purporting to relinquish his parental rights to Johnson and his sister[3] and filed a petition in Houston County Superior Court to transfer physical custody of B.A.S. from Doris Stills to Johnson. Johnson was later added as a plaintiff in that custody action.
While these proceedings were pending, Doris Stills died of cancer, and B.A.S. went to live in Texas with Cassandra's brother and sister-in-law, Terry and Christal Stills. Terry Stills was substituted as the defendant in Trainer's custody action, and, on June 21, 1999, Stills filed a petition to terminate Trainer's parental rights in B.A.S. that was eventually transferred to the Houston County Juvenile Court.[4]
B.A.S. continued living with the Stillses until approximately June 29, 1999, when the Houston County Superior Court granted Trainer's custody petition and awarded custody of the child to Johnson. Thereafter, B.A.S. went to live with Johnson in New Jersey.
Terry Stills subsequently appealed the Houston County Superior Court's custody order, and on July 10, 2000, the Supreme Court of Georgia reversed.[5] That Court held that the Houston County Superior Court erred in concluding that Trainer's purported relinquishment of parental rights vested in Johnson a superior legal right to custody of B.A.S.[6] The Court also ruled that the proper standard for determining custody was not the fitness of the custodian, as applied by the trial court, but the best interest of the child.[7] The Court remanded the matter back to the Houston County Superior Court for a redetermination of custody under the proper standard. In its opinion, the Court noted
that there remains pending a petition filed by Terry Stills in the juvenile court to terminate the parental rights of Steven Trainer. Should the juvenile court conclude that in accordance with the standards set forth in OCGA § [15-11-94] there is clear and convincing evidence of Steven Trainer's inability or failure to render proper parental care to the child, and that it would be in the best interest of the child to terminate Steven Trainer's parental rights, then Trainer's attempt to relinquish his parental power to his mother by voluntary contract would be of no effect. On remand, the trial court should first resolve the termination proceeding before finally adjudicating the custody issue.[8]
On July 21, 2000, shortly after the Supreme Court issued its opinion in Stills v. Johnson, Terry and Christal Stills, who had relocated to Fulton County, petitioned the Fulton County Superior Court to adopt B.A.S. At some point during the year 2000, Johnson filed a competing adoption petition in a New Jersey court and also intervened in the Stillses' adoption action.
*146 Seeking finality to the various actions, the Houston County Superior Court judge presiding over the remanded custody action contacted both the New Jersey court and the Fulton County court so that the three judges could determine the most appropriate forum for deciding the custody and adoption disputes. The New Jersey court subsequently dismissed Johnson's adoption action, finding that Georgia was a more appropriate venue. The Houston County Superior Court likewise transferred venue of Trainer and Johnson's custody action to Fulton County Superior Court so that it could be consolidated with the Stillses' adoption action.
On September 25, 2000, the Houston County Juvenile Court entered an order terminating Trainer's parental rights in B.A.S., and on June 19, 2001, the Fulton County Superior Court granted the Stillses' petition to adopt B.A.S. In Case No. A01A2174, Trainer, pro se, appeals the Houston County Juvenile Court's termination order,[9] and in Case No. A02A0148, Johnson appeals the Fulton County Superior Court's adoption order. In addition to these two appeals, the parties have filed numerous motions. Although many of these motions are now moot, we will address them, as necessary, in our discussion of the respective appeals.
Case No. A01A2174
In challenging the juvenile court's termination order, Trainer contends that the court lacked personal and subject matter jurisdiction, that the court's order was unsupported by sufficient factual findings, and that the termination violated his fundamental right to raise B.A.S. Finding no merit in Trainer's assertions, we affirm.
1. Before turning to Trainer's enumerations of error, we must address Stills' motion to dismiss the appeal. Stills argues that Trainer's appeal should be dismissed because Trainer directly appealed the court's order and, as an incarcerated litigant, the Prison Litigation Reform Act[10] required him to file an application for discretionary appeal.[11] We disagree. The Act requires a prisoner to file an application for discretionary appeal only if he filed the underlying action.[12] Because Trainer did not file the termination petition at issue here, the Act did not apply, and Stills' motion to dismiss is denied.
2. In his first enumeration of error, Trainer asserts that the Houston County Juvenile Court lacked subject matter jurisdiction to decide the termination petition, that the court's order is void because it fails to recite sufficient facts supporting its subject matter jurisdiction, and that the court lacked personal jurisdiction over him. We disagree.
Subject matter jurisdiction over the termination petition was conferred by OCGA § 15-11-28(a)(2)(C), which provides that juvenile courts
shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action ... [f]or the termination of the legal parent-child relationship... other than that in connection with adoption proceedings under Chapter 8 of Title 19, in which the superior courts shall have concurrent jurisdiction to terminate the legal parent-child relationship.[13]
Here, Trainer asserts that the juvenile court lacked jurisdiction because the superior court had exclusive jurisdiction to entertain Terry Stills' termination petition, which, Trainer claims, Stills filed in connection with an adoption proceeding. Trainer apparently relies on the former version of OCGA § 15-11-28(a)(2)(C) that gave the superior court exclusive jurisdiction over such combined proceedings.[14] Inasmuch as the amended *147 statute now gives the superior court concurrent jurisdiction with the juvenile court, this assertion is without merit.[15]
We also disagree with Trainer's argument that the court's order failed to recite sufficient jurisdictional facts. The court's order expressly stated that it was addressing Stills' petition to terminate Trainer's parental rights, which, as discussed above, is within the juvenile court's jurisdiction.[16]
Finally, Trainer, who was personally served with process, asserts that the juvenile court lacked personal jurisdiction over him. Again we disagree. Personal jurisdiction is an issue that can be waived,[17] and in this case Trainer has not shown that he challenged the court's personal jurisdiction below. Thus, we deem the issue waived on appeal.[18] Furthermore, even if Trainer had preserved the issue below, he has not asserted any argument or pointed to any evidence establishing that the court lacked jurisdiction over him. Thus, this unsupported claim of error is also deemed abandoned under Court of Appeals Rule 27(c)(2).
Perhaps confusing the issue of personal jurisdiction with venue, Trainer argues that the Houston County Juvenile Court was the wrong court to address the termination petition because the child did not reside in that county.[19] But the record shows that Trainer stipulated to venue in Houston County, and this issue is, therefore, also waived for appeal.[20]
3. Trainer next asserts that insufficient evidence supported the juvenile court's termination order. A juvenile court's decision to terminate parental rights under OCGA § 15-11-94 involves a two-step process.
The court [must] first determine[ ] whether clear and convincing evidence exists of parental misconduct or inability. The court [must] then determine whether termination is in the best interest of the child. [The] standard on review is whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights were lost.[21]
The evidence in this case showed that Trainer has an extensive criminal history. On numerous occasions since the early 1980s, Trainer has been either jailed or imprisoned for offenses in North Carolina, Missouri, New Jersey, and Georgia. Most recently, in 1994, Trainer was convicted in DeKalb County on two counts of robbery, and one count each of battery, theft by receiving stolen property, and possessing crack cocaine in violation of the Georgia Controlled Substances Act. Approximately 14 to 15 months after his DeKalb County convictions, Trainer pled guilty to robbery charges in Gwinnett County.
Since being incarcerated in 1994, Trainer has been less than a model prisoner. He has been repeatedly disciplined by prison officials for behavioral problems, including an altercation with a guard, threatening guards, repeated insubordination, unauthorized possession of contraband, and obstructing correctional officers in their duties. Apparently based on these disciplinary problems, Trainer's security classification was at one point increased from medium security to close security, and following further disciplinary reports, it was increased to maximum security. Trainer has been incarcerated for the entire life of B.A.S., he remains incarcerated, and he will not be eligible for parole until June 2004, at the earliest.
This evidence provides clear and convincing proof that Trainer's parental rights in B.A.S. have been lost. It is clear *148 that, due to Trainer's persistent criminal conduct and resulting incarcerations, B.A.S. has been deprived of any parenting by his natural father.
Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present. When an incarcerated parent has a criminal history of repetitive incarcerations for the commission of criminal offenses, this constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue.[22]
Trainer's extensive criminal history and continuous incarceration are not the only aggravating circumstances establishing that he has not been, and will not be, able to care for B.A.S. The transcript reveals that Trainer has unbridled contempt for the prison system and that his associated disciplinary problems, which show no signs of abating, have made him a maximum security prisoner, a circumstance that could delay his eligibility for parole.[23]
In addition to these aggravating factors, there is also evidence that Trainer has, without justifiable cause, failed to develop any parental bonds with B.A.S. or provide financial support for him.[24] In fact, since the time he was first incarcerated, Trainer's contact with B.A.S. has been almost nonexistent. Trainer has seen B.A.S. only once since early 1997 and did not participate in court-ordered telephone visitation. In addition, although Trainer has exhausted his savings to pay his attorney fees, he has never contributed any financial support for the child. Considering these circumstances, the juvenile court did not err in finding sufficient evidence of Trainer's parental misconduct and inability.[25]
There is also sufficient evidence supporting the juvenile court's conclusion that the termination is in the best interest of B.A.S. Indeed, the same evidence discussed above shows that it is in B.A.S.'s best interest to terminate Trainer's parental rights.[26] B.A.S. needs emotional and moral stability and a secure, stable home.[27] The termination of Trainer's parental rights is clearly a step in that direction.
4. Trainer also asserts that the trial court erred in restricting the scope of the evidence presented at the termination hearing to events predating June 1999. The transcript shows, however, that the court's order was precipitated by Trainer's motion in limine to restrict the evidence. Before the termination hearing, Trainer's counsel argued that the court should only consider whether Trainer's parental rights should have been terminated prior to January 1998, when he attempted to relinquish his parental rights to Johnson. Thus, Trainer moved to limit the hearing to pre-January 1998 evidence.
Inasmuch as "[a] finding of unfitness must be based on present circumstances,"[28] the trial court erred in limiting the evidence to events occurring prior to June 1999, the month the termination petition was filed. Under other circumstances, such ruling might be cause for reversal.[29] Trainer's trial counsel, however, moved to restrict the scope of the evidence, and the court's ruling was prompted solely by that motion. "It is well established that induced error is impermissible *149 and furnishes no ground for reversal."[30] Moreover, notwithstanding the court's ruling in limine, the record contains ample evidence of Trainer's current unfitness. Accordingly, the court's evidentiary ruling does not warrant reversal.
5. Finally, Trainer asserts that the juvenile court's termination order violated his constitutional rights to raise his child. Trainer has not shown, however, that he ever asserted these constitutional arguments below. Accordingly, we deem them waived for appeal.[31]
Case No. A02A0148
In this appeal, B.A.S.'s paternal grandmother, Johnson, asserts that the trial court lacked subject matter jurisdiction to hear the adoption case, that the court should have resolved the transferred custody issue before addressing the Stillses' adoption petition, that the court erroneously relied on a void termination of parental rights order, and that the court erred in granting the Stillses' adoption of B.A.S. because their petition was fatally flawed and the evidence was insufficient.
6. Before addressing Johnson's assertions, we must address her motion to strike the Stillses' brief because it contains an appendix of exhibits in violation of Court of Appeals Rule 23(f). Although we deny Johnson's motion, in accordance with Rule 23(f), we will not consider the exhibits attached to the brief.
Equally troublesome as the Stillses' reliance on the appendix, but not raised by Johnson, is the Stillses' violation of Court of Appeals Rule 27(b)(2), which requires that an appellee's brief "shall contain appellee's argument and the citation of authorities as to each enumeration of error." Although Johnson enumerated seven errors and organized her brief in accordance with Court of Appeals Rule 27(a), the Stillses' argument is divided into three sections that bear little correlation to Johnson's asserted errors. In short, the Stillses' brief, which relies heavily on the attached appendix and fails to address most of Johnson's arguments, was of little assistance to the Court in deciding the relative merits of this appeal.
7. With regard to the merits, Johnson first asserts that the trial court lacked jurisdiction to consider the adoption petition under the Uniform Child Custody Jurisdiction Act[32] ("UCCJA" or "Act"). We disagree.
Before addressing this assertion, we note that the UCCJA was amended in 2001 and is now codified as the Uniform Child Custody Jurisdiction and Enforcement Act.[33] Although the recently amended version of the Act expressly provides that it is inapplicable to adoptions,[34] and we would typically apply the law as it exists at the time of our review,[35] the amendments also require that a custody action "which was commenced before July 1, 2001, is governed by the law in effect at the time the motion or other request was made."[36] At the time this adoption action was filed, July 21, 2000, the UCCJA applied to adoption proceedings.[37] Accordingly, we will apply the former version of the Act to determine whether the trial court appropriately exercised jurisdiction in this adoption case.
Under the former version of the Act, a court could have exercised jurisdiction over an adoption action if, among other grounds: (1) the court was "competent to decide child custody matters; ... [; (2)] another state [had] declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; and [ (3) it was] in the best interest of *150 the child that this court assume jurisdiction."[38]
Each of these requirements was met here. First, Georgia law confers jurisdiction upon superior courts over adoption petitions.[39] Thus, the Superior Court of Fulton County was competent to decide this adoption matter.[40] Second, the New Jersey court declined to exercise jurisdiction, finding that Georgia was a more appropriate forum to decide the custody issue.
Finally, it was in the best interest of B.A.S. that the Fulton County Superior Court assume jurisdiction of the Stillses' adoption petition and Johnson's custody action. At the time the three judges decided that Fulton County was the most appropriate forum, B.A.S. had lived most of his life in Georgia, and both his biological father and the Stillses, his aunt and uncle, reside here. Although New Jersey was technically B.A.S.'s home state, because he had been living there for at least the previous six months,[41] this was only because a Georgia court had granted temporary physical custody to Johnson.[42] Indeed, Georgia courts had been intimately involved in deciding B.A.S.'s fate since the inception of this longstanding custody dispute. Before the issue of jurisdiction was decided by the three judges, the Houston County Probate Court had appointed the maternal grandmother as B.A.S.'s temporary legal guardian, the Houston County Superior Court was presiding over Trainer and Johnson's custody action, the Supreme Court of Georgia had issued an opinion that reversed the Houston County court's custody award and presented a road map for determining final custody,[43] and the Houston County Juvenile Court was considering whether to terminate the biological father's parental rights. As noted by the Houston County Superior Court judge who previously presided over Johnson's custody petition, this case involves "two families that are fighting over a child, but worst of all, you've got a little child that has been pushed and pulled and battered about from pillar to post." The child needed closure, and considering the substantial connection he had with Georgia and its courts, it was in his best interest that a Georgia court assume jurisdiction over the dispute.[44]
Alternatively, Johnson argues that the trial court lacked jurisdiction under the federal Parental Kidnapping Prevention Act ("PKPA").[45] It is unclear, however, whether the PKPA, which, by its express terms applies only to "custody" and visitation determinations, also governs adoption proceedings. The sole authority cited by Johnson in support of this argument, Gainey v. Olivo,[46] held only that the Court of Appeals erred in concluding that the UCCJA did not apply to adoption proceedings. In its decision, however, the Court of Appeals also found that "the language and purpose of [the PKPA] are essentially the same as the UCCJA, and we are similarly persuaded that the PKPA does not apply to adoption proceedings."[47] Notwithstanding the similarity of the two acts, the Supreme Court did not address the applicability of the PKPA to adoptions in its opinion.[48]
*151 Even if we assume that the PKPA governs this adoption proceeding, it did not deprive the Fulton County Superior Court of jurisdiction. As stated above, the jurisdictional language in the PKPA is essentially the same as the UCCJA,[49] and for the reasons discussed above, jurisdiction under the PKPA, if it applied, was appropriately exercised by the court.
8. In two enumerations of error, Johnson asserts that the Fulton County Superior Court erred in failing to resolve her transferred custody action before ruling on the Stillses' adoption petition. According to Johnson, the Supreme Court's opinion in Stills required the trial court to resolve the custody action "prior to adjudicating a new action between the same parties."[50]
The Supreme Court's remand instructions in Stills are quoted above. Those instructions did not contemplate new actions between the parties, but only required resolution of "the termination proceeding before finally adjudicating the custody issue" according to the best interest of B.A.S.[51] That is precisely what occurred here. The Houston County Juvenile Court terminated Trainer's parental rights, and the Fulton County Superior Court subsequently found that it was in the best interest of the child to grant the Stillses' adoption petition and order that custody be transferred to them. Furthermore, considering the need for a final resolution to the custody issue in the best interest of the child, there was nothing to be gained by extending the controversy with a piecemeal consideration of Johnson's custody petition and the Stillses' adoption petition, as suggested by Johnson.[52]
In addition, contrary to Johnson's argument, the trial court was not required to give any weight to Trainer's release of his parental rights to Johnson. In Stills, the Supreme Court ruled that, if the juvenile court found it appropriate to terminate Trainer's parental rights, then his "attempt to relinquish his parental power to his mother by voluntary contract would be of no effect."[53] The juvenile court took such action, and, in Case No. A01A2174, we affirmed the termination order.
Johnson also seems to contend, under the same enumerations of error, that the Houston County Superior Court improperly transferred the custody proceeding to Fulton County because OCGA § 9-14-4 requires that habeas corpus actions must be filed in the county where the illegal detention exists. We disagree with Johnson's characterization of the transferred case as a habeas corpus action. Although it appears that the Houston County Superior Court construed the petition to grant custody to Johnson as one for habeas corpus, "habeas corpus is not an available remedy to inquire into the legality of the custody of a child in a case where the alleged detention is not against the right of the applicant [seeking custody]."[54] Inasmuch as Johnson, as B.A.S.'s grandmother, did not have a legal right to custody of the child, habeas corpus was not an available remedy to transfer custody to her.[55] Accordingly, we find no merit in Johnson's argument that Fulton County Superior Court improperly accepted the case under the habeas corpus statute.
Furthermore, the record shows that Johnson's counsel acquiesced in the process that resulted in that transfer. Before the transfer, the Houston County Superior Court judge proposed to both parties that all three judges should confer by telephone to determine which was the most appropriate forum to decide the custody issue, and Johnson's counsel agreed that this was a fair way to *152 resolve the dispute. "A party may not complain on appeal of a ruling that [she] contributed to or acquiesced in by [her] own action, trial strategy, or conduct."[56] The law, in all of its grandeur and magnificent splendor, does not protect use from self folly. Finally, the transfer of venue was consistent with Georgia's policy as declared in the Child Custody Intrastate Jurisdiction Act[57] of avoiding jurisdictional competition and promoting cooperation among courts in intrastate child custody matters.[58]
Also subsumed in these same enumerations of error is Johnson's assertion that res judicata and collateral estoppel precluded the Fulton County Superior Court from readjudicating facts of the custody dispute. We have reviewed Johnson's statement of the method by which she preserved this argument and do not find that she raised it below. Accordingly, we deem it waived for appeal.[59] Furthermore, we are compelled to note that Johnson's argument neglects the fact that, in Stills v. Johnson, the Supreme Court reversed the Houston County Superior Court's custody order and remanded it for a new custody hearing, clearly contemplating the introduction of new evidence concerning the child's best interest.[60]
9. Johnson next asserts that the trial court's refusal to consider her adoption petition and its failure to separately address her custody action denied her due process.
The constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard. Neither the federal nor the state constitution's due process right guarantees a particular form or method of procedure, but is satisfied if a party has reasonable notice and opportunity to be heard, and to present its claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it.[61]
In this case, the record shows that the trial court gave Johnson every opportunity to fight for custody of B.A.S. and merely prevented her from pursuing an adoption petition in Georgia because the court lacked jurisdiction over such petition. Inasmuch as Johnson was not a Georgia resident, the trial court properly prohibited her from filing an adoption petition here.[62] And, as for custody, the record shows that, prior to the final hearing, the court observed that it was "confident that, should [it] deny the Stills' adoption petition and award custody of the child to Ms. Johnson, the New Jersey court will reconsider its denial of jurisdiction and allow Ms. Johnson to pursue adoption of the child in New Jersey." Although Johnson spent much of her time at the final hearing challenging the court's jurisdiction instead of focusing on her asserted right to custody, her counsel presented argument and examined witnesses, including Johnson, concerning whether it would be in B.A.S.'s best interest to be in her custody. The trial court's final order likewise addressed whether it was in B.A.S.'s best interest to be in the custody of the respective parties. Although Johnson was not given the New Jersey venue she preferred, it is clear that she was provided a reasonable opportunity to pursue custody of B.A.S. and to challenge the Stillses' adoption petition, and that she was, therefore, not deprived of due process.[63]
*153 10. Johnson asserts that, because Trainer had already relinquished his parental rights to her, the Houston County Juvenile Court's termination order was void, and the Fulton County Superior Court therefore erred in relying on that termination order. We addressed the validity of the Houston County Juvenile Court's termination order in Case No. A01A2174 and the effect of Trainer's purported relinquishment in Division 8 of our discussion of this appeal. The juvenile court's termination order rendered Trainer's relinquishment ineffective,[64] and this assertion is, therefore, without merit.
11. Johnson claims that the trial court erred in granting the Stillses' adoption petition because it was facially invalid and improperly filed. Specifically, Johnson argues that the trial court should have dismissed the petition because the Stillses had neither a written surrender of Trainer's parental rights nor a valid termination of his parental rights.[65] According to Johnson, the evidence instead showed that Trainer had actually surrendered his parental rights to her. In advancing this argument, Johnson again refuses to recognize that the Houston County Juvenile Court terminated Trainer's parental rights and that his "attempt to relinquish his parental power to his mother ... [was, therefore,] of no effect."[66]
12. In her last enumerated error, Johnson asserts that there was insufficient evidence supporting the trial court's order granting the petition. Again, we disagree.
In a case like this, where no natural parent has rights in the child, the trial court, which sits as the factfinder, is vested with broad discretion.[67] Armed with this discretion, the trial court must determine whether the "petitioner is capable of assuming responsibility for the care, supervision, training, and education of the child, that the child is suitable for adoption in a private family home, and that the adoption requested is for the best interest of the child."[68] On appeal, we construe the evidence in a light most favorable to the court's judgment, and we will affirm a trial court's finding that the adoption is in the child's best interest if there is any evidence to support it.[69]
In addition to the facts presented above, the evidence showed that Terry Stills, who married Christal Stills in 1998, was the natural mother's Lamaze birthing class partner, the sole father figure for B.A.S. for the first two and one-half years of the child's life, and provided financial support for him. Even after the mother and B.A.S. moved away to a different part of the state, Terry Stills continued his relationship with B.A.S., routinely talking to him by telephone and visiting him on alternating weekends. After custody of B.A.S. was transferred to Johnson in 1999, Terry and Christal Stills frequently attempted to speak with him by telephone and visit him in New Jersey, but were often denied access to him and confronted with hostility by Johnson and her relatives. In contrast, during the time that B.A.S. was with the Stillses, they attempted to foster his relationship with Johnson.
At the time of the hearing, the Stills family lived together in a three-bedroom home in a quiet neighborhood. Terry Stills was gainfully employed and actively involved in the Boy Scouts and other community programs. Christal Stills worked in the home raising the couple's two children: a fourteen-year-old daughter and a son who is almost two years old. The daughter is an honor roll student and a member of her school's band. Both children have a good relationship with B.A.S., and B.A.S. also plays in the neighborhood with other children his own age. Considering *154 this evidence, the trial court did not clearly err in finding that the Stillses are capable of raising B.A.S. and that it is in B.A.S.'s best interest to be adopted by the couple.[70]
13. In its final order granting the adoption, the trial court stated that the child's "best interests are served by the adoption of him by and immediate transfer of his custody to the [Stillses]." Accordingly, the court ordered that the Stillses were "authorized to pick up [B.A.S.] and his possessions from Ms. Johnson's home at noon on June 23, 2001." Upon filing her notice of appeal from the trial court's adoption order, Johnson also filed an emergency motion for supersedeas to maintain temporary custody of B.A.S. while her appeal was pending. In an attempt to minimize the harmful effects that would likely be caused by shifting B.A.S. among different custodians while the various appeals were pending, we granted Johnson's motion. In our order, we clarified that "our grant of supersedeas merely preclude[d] enforcement of the Fulton County Superior Court's June 19, 2001 order," and ordered the parties to comply with an existing trial court "visitation order and with such further visitation orders as the trial court may impose while the appeal is pending."
The trial court's existing visitation order permitted the Stillses to visit with the child in Georgia for six weeks during his summer vacation, beginning on June 21, 2001.[71] Contrary to the spirit of our order granting supersedeas, the trial court subsequently extended this visitation to effectively give custody to the Stillses while the appeals were pending. The trial court's latter order invited a flurry of motions to this Court which remain pending. Although those motions are now moot, we are compelled to note our concerns with the trial court's action.
Notwithstanding the trial court's best intentions, we expected the court to comply with our mandate of supersedeas in both letter and spirit. Although, in hindsight, it may be said that the best interest of B.A.S. was served by allowing him to continue living with the Stillses, at the time we issued our order granting supersedeas, the issues of termination of parental rights and custody were far from final resolution. Without belaboring the point, it was inappropriate for the trial court to speculate as to the final outcome of these appeals and grant further, continuing visitation that amounted to a temporary transfer of custody, after we had ordered that the status quo be preserved. It is apparent that the trial court's order only led to further uncertainty concerning the child's temporary custody and escalated the level of hostility between the parties.
Judgments affirmed.
JOHNSON, P.J., and ELLINGTON, J., concur.
NOTES
[1] 272 Ga. 645, 533 S.E.2d 695 (2000).
[2] We note that, in conflict with the Supreme Court's opinion in Stills, the record before us indicates that Trainer was sentenced to as many as 40 years for his convictions.
[3] Trainer's relinquishment of parental rights purported to "temporarily" transfer his parental rights to both his mother, "Gertrude E. Johnson, and/or Trudi Renee Johnson," his sister.
[4] Stills filed the petition in Tattnall County Juvenile Court, but the case was later transferred to the Houston County Juvenile Court. Trainer challenges that transfer in his appeal of the juvenile court's order terminating his parental rights.
[5] See Stills, supra.
[6] See id. at 649, 533 S.E.2d 695.
[7] Id. at 649-650, 533 S.E.2d 695.
[8] (Footnote omitted.) Id. at 651(3), 533 S.E.2d 695.
[9] We note that, although Trainer is proceeding pro se on appeal, he was represented by counsel below.
[10] OCGA § 42-12-1 et seq.
[11] See OCGA § 42-12-8 (requiring that "[a]ppeals of all actions filed by prisoners" must proceed pursuant to the discretionary appeal procedure contained in OCGA § 5-6-35); In the Interest of K.W., 233 Ga.App. 140(1), 503 S.E.2d 394 (1998).
[12] See id.
[13] (Emphasis supplied.)
[14] See In the Interest of D.L. N., 234 Ga.App. 123-124(1), 506 S.E.2d 403 (1998) (addressing jurisdictional statute previously codified as OCGA § 15-11-5(a)(2)(C)).
[15] See id.; OCGA § 15-11-28(a)(2)(C).
[16] See In the Interest of M.L.C., 249 Ga.App. 435, 436(1), 548 S.E.2d 137 (2001); see also OCGA § 15-11-28(a)(2)(C).
[17] See M.L.C., supra.
[18] See id.
[19] See OCGA § 15-11-29(a) (establishing venue in the county where the child resides).
[20] See Maalouf v. Knight, 237 Ga.App. 509, 510(1), 515 S.E.2d 650 (1999).
[21] (Citations and punctuation omitted.) In the Interest of D.A. P., 234 Ga.App. 257, 259(2), 506 S.E.2d 438 (1998) (decided under former OCGA § 15-11-81).
[22] (Citation, punctuation and emphasis omitted.) Id.; see also Stills, supra at 651(3), 533 S.E.2d 695.
[23] See OCGA § 42-9-43(a)(1), (2) (providing that parole board should consider correctional institution's report of inmate's conduct and the prisoner's efforts to improve his social attitude).
[24] See OCGA § 15-11-94(b)(4)(C)(i), (ii).
[25] See D.A.P., supra at 260, 506 S.E.2d 438; see also In the Interest of S. H, 251 Ga.App. 555, 558(1), 553 S.E.2d 849 (2001).
[26] See In the Interest of D.T.C., 248 Ga.App. 788, 792(3), 548 S.E.2d 11 (2001).
[27] See id.
[28] (Punctuation omitted.) In the Interest of J.E.E., 235 Ga.App. 247, 249, 509 S.E.2d 147 (1998).
[29] See, e.g., In re N.F.R., 179 Ga.App. 346, 348(2), 346 S.E.2d 121 (1986) (reversing termination of parental rights because no evidence of current unfitness).
[30] Torres v. State, 272 Ga. 389, 392(7), 529 S.E.2d 883 (2000).
[31] See Zant v. Moon, 264 Ga. 93, 94(1), 440 S.E.2d 657 (1994).
[32] OCGA § 19-9-40 et seq.
[33] See OCGA § 19-9-40 (2001 Supp.).
[34] See OCGA § 19-9-42 (2001 Supp.).
[35] See D.L.N., supra at 124, 506 S.E.2d 403.
[36] OCGA § 19-9-102 (2001 Supp.).
[37] See In re Stroh, 240 Ga.App. 835, 844(1)(c)(ii), 523 S.E.2d 887 (1999).
[38] former OCGA § 19-9-43(a)(4).
[39] See OCGA § 19-8-2(a).
[40] See former OCGA § 19-9-43(a)(4)(A).
[41] See former OCGA § 19-9-42(5).
[42] See Mock v. Smith, 233 Ga.App. 36, 37, 503 S.E.2d 319 (1998) (observing that Georgia appellate courts have "recognized that in appropriate cases the state which made the initial custody determination may be the appropriate forum in which to relitigate subsequent custody matters even though that state is no longer the home state of the minor children") (punctuation omitted).
[43] See Stills, supra.
[44] See Mock, supra at 37-38, 503 S.E.2d 319; Holt v. Leiter, 232 Ga.App. 376, 379(1), 501 S.E.2d 879 (1998).
[45] 28 U.S.C. § 1738A.
[46] 258 Ga. 640, 644(1), 373 S.E.2d 4 (1988).
[47] Olivo v. Gainey, 185 Ga.App. 427, 428(2), 364 S.E.2d 279 (1987), rev'd in part, Gainey v. Olivo, 258 Ga. at 644, 373 S.E.2d 4.
[48] See Gainey v. Olivo, 258 Ga. 640, 373 S.E.2d 4.
[49] Compare 28 U.S.C. § 1738A (c) with former OCGA § 19-9-43(a)(4)(A).
[50] (Emphasis omitted.)
[51] Stills, supra.
[52] See generally OCGA § 19-9-21(a)(4), (6) (generally expressing need to discourage continuing child custody controversies and avoid relitigation of custody decisions).
[53] Stills, supra.
[54] (Punctuation omitted.) Spitz v. Holland, 243 Ga. 9, 10, 252 S.E.2d 406 (1979).
[55] See id.; see also Stills, supra at 649, 533 S.E.2d 695 (stating that Johnson, as a grandmother, had no superior legal right to custody of B.A.S.).
[56] Holcomb v. State, 268 Ga. 100, 103(2), 485 S.E.2d 192 (1997).
[57] OCGA § 19-9-20 et seq.
[58] OCGA § 19-9-21(a)(1), (2).
[59] See Allison v. State, 217 Ga.App. 580, 582(2), 459 S.E.2d 557 (1995).
[60] See Stills, supra at 650, 652, 533 S.E.2d 695.
[61] (Citation and punctuation omitted.) Cobb County School Dist. v. Barker, 271 Ga. 35, 37(2), 518 S.E.2d 126 (1999).
[62] See OCGA § 19-8-3(a)(3); see also In re Stroh, supra at 840(1)(a), 523 S.E.2d 887. We note that, although Johnson further contends that the trial court erred in refusing to accept the New Jersey court's transfer of her adoption petition in that case, there is no evidence of record that the New Jersey court ever attempted to transfer Johnson's petition here. Instead, the New Jersey court's order clearly reflects that it dismissed the petition.
[63] See Barker, supra.
[64] See Stills, supra at 651, 533 S.E.2d 695.
[65] See generally OCGA § 19-8-7 (providing for the surrender or termination of parental rights where a relative is seeking to adopt the child).
[66] Stills, supra.
[67] See Matherly v. Kinney, 227 Ga.App. 302(1), 489 S.E.2d 89 (1997).
[68] OCGA § 19-8-18(b); see also Matherly, supra.
[69] See id. at 303, 489 S.E.2d 89; Bateman v. Futch, 232 Ga.App. 271, 274(2), 501 S.E.2d 615 (1998).
[70] See OCGA § 19-8-18(b); Matherly, supra; Bateman, supra.
[71] Based on her belief that an automatic supersedeas preserved the status quo pending appeal, Johnson initially refused to release B.A.S. to the Stillses, even though they were, at a minimum, entitled to be with him for this six-week summer visit. It appears, however, that after police officers intervened in the dispute, B.A.S. was transferred to the Stillses for the visitation.